## W. E. JOHNSON ET AL. V. S. A. DANIEL ET AL.

### Decided June 1, 1901.

**1.—Verification of Pleadings—Injunction and Trespass to Try Title.**

Where plaintiffs sued in trespass to try title and for an injunction to restrain a judgment under which the land had been sold, a complaint against the judgment rendered therein in plaintiffs' favor, on the ground that their petition for injunction was not sworn to, is not well taken where the case was finally tried on an amended petition and no exception appears to have been made to the original pleadings (upon which a temporary injunction had issued) because not sworn to.

**2.—Judgment by Default—Grounds for Vacating.**

A judgment vacating and setting aside a former judgment by default is warranted by evidence showing that in such former suit there was, because of the existence of smallpox and quarantine, an oral agreement between counsel for the parties that the case should be passed and continued until the next term, whereby the defendants were prevented from attending court and of learning of such default judgment until after the term had expired.

**3.—Excution Sale Set Aside—Inadequacy of Price—Notice.**

Where the amount bid by plaintiff at his own execution sale is grossly inadequate, and the defendant in execution is possessed of personal property subject to execution sufficient to pay the debt and has not been called upon to pay the execution or to point out property, and a levy is made by the officer upon real estate and he fails to give notice thereof to the defendant, the jury is justified in finding that the constable's deed should be set aside.

**4.—Same—Actual Notice of Sale.**

Actual notice of the sale of land to the defendant in execution will not dispense with the necessity of notice to him of the levy of the execution which the statute requires the officer to give.

**5.—Tender of Money Into Court—Judgment Awarding Execution Therefor.**

Where plaintiffs, seeking to have an execution sale of land set aside, tendered into court the amount which defendant had bid for the land, and there was judgment in plaintiffs' favor setting aside the sale, and in defendant's favor for the amount of such bid, it was not a tenable objection to the judgment in favor of plaintiffs that the amount of the bid should have been left in the custody of the clerk, defendant being awarded execution therefor and it not appearing the plaintiffs were insolvent.

**6.—Abandonment of Contract to Acquire Land.**

See evidence held to warrant a verdict finding, in effect, that a contract by which the parties were to acquire land under the five years statute of limitations and one-half of it to be then conveyed by one of them to the other, who was to pay half the taxes from year to year, had been abandoned by such other party.

Appeal from Freestone. Tried below before Hon. L. B. Cobb.

*Boyd, Compton & Anderson,* for appellants.

*Simkins & Mays* and *R. M. Edwards,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted on the —— day of March, 1900, in the District Court of Freestone County by Jeffie Daniel, joined by her husband, S. A. Daniel, Gus Daniel, and C. F. Daniel, as plaintiffs, against W. E. Johnson and H. H. Powell, sheriff

of Freestone County, in the nature of a bill in equity to vacate and set aside a judgment by default entered in cause No. 2376, styled W. E. Johnson v. S. A. Daniel, Jeffie Daniel, Gus Daniel, and C. F. Daniel, entered on the 13th of February, 1900, in favor of W. E. Johnson for 1400 acres of land out of the east half of the C. Chemar league in Free-stone County, and to recover the title to said land. Plaintiffs excused their failure to appear and defend said suit on the ground of their sick-ness, and an alleged verbal agreement made by their attorney with the attorney representing W. E. Johnson, to the effect that said cause should be postponed until it could be ascertained whether the defendants, Dan-iels, could come into court, and if they could not, that the case would be continued at said February term.

Plaintiffs set up their several defenses to the suit against them by Johnson, alleged their ownership of the land, and that 800 acres of the land was the separate property of the plaintiff, Jeffie Daniel. The plaintiffs further alleged that Johnson claimed under a sale made by virtue of an execution issued on a judgment rendered in the justice court in his favor against S. A. Daniel for $86.70; that the levy and sale were made without notice to S. A. Daniel or any of the plaintiffs; without calling upon S. A. Daniel to pay the execution or point out a levy; that the land was sold to Johnson for $75, and the bid credited upon his exe-cution; that the amount of the bid was grossly inadequate and insuf-ficient to pass the title to the land, which was then and there worth $5000; and plaintiff tendered the amount of the bid in court, $75, for the benefit of defendant Johnson. The plaintiffs also set out an agree-ment made between Gus Daniel and W. R. Boyd for the acquisition of title to 1600 acres of the land, and alleged that Boyd abandoned the same. They alleged that S. A. Daniel was not insolvent in October, 1894, nor rendered insolvent by the conveyance of the 1600 acres to Gus Daniel. They prayed that the cloud cast upon their title by the deed to Johnson be canceled and removed. They asked that the judg-ment by default be set aside, and for a perpetual injunction against the enforcement of the same.

Defendants answered by general and special exceptions which do not appear to have been called to the attention of the court, general denial and special answer denying material allegations contained in plaintiffs' bill of petition, setting up title in W. E. Johnson, and attacking all the conveyances of plaintiffs as being fraudulent and without consideration. Defendants alleged the conveyance from S. A. Daniel to Gus Daniel for 1600 acres out of the east half of the Chemar league to be without con-sideration and made to hinder, delay, and defraud his creditors, and alleged that all the plaintiffs had notice thereof. W. R. Boyd, with leave of the court, intervened in the case, setting up his claim to 800 acres of land in controversy, and alleged that S. A. Daniel, having the ap-parent title to the land but asserting no claim thereto, an agreement was entered into between Gus Daniel and himself that Gus Daniel would procure a deed from his father, S. A. Daniel, to the 1600 acres of

land in the eastern part of the Chemar league, and would place it on record, and would enter upon the land and hold it for five years, cultivating and improving the same and paying all taxes thereon, and intervener was to fight all adverse claims that might be brought against the land, and Gus Daniel was to convey to him one-half of the 1600 acres of land, and said Gus Daniel was to have the 200 acres he improved as his homestead on his half of said land; that Gus obtained the deed from his father without any consideration, and entered on said land and made the improvements agreed upon; that said Gus Daniel subsequently transferred 800 acres of this land to his mother and 500 to his brother; that both of them took the land with full notice of intervener's rights; that this suit in the name of W. E. Johnson is now being prosecuted in the name of W. E. Johnson for the benefit of this intervener and his partners, R. N. Compton and J. G. Anderson, and prays that in the event W. E. Johnson is not entitled to recover all of the land, that intervener be allowed to recover one-half interest of the lands conveyed to Gus Daniel and Jeffie Daniel.

There was a trial and verdict in favor of the plaintiff against defendant and intervener, and judgment entered thereon setting aside said default judgment, perpetually enjoining the execution of the same, and canceling the constable's deed to W. E. Johnson as a cloud upon their title. Judgment was rendered in favor of W. E. Johnson and his assigns for $75 against all plaintiffs, and awarding execution for the same. The costs were taxed against defendant and intervener. Defendants and intervener filed a motion for new trial, which being overruled, they have prosecuted an appeal to this court. The facts sufficiently appear in the opinion.

1. The contention of appellants that it was error for the court to proceed to trial, and in not directing a verdict for defendants on the ground that plaintiffs' petition for injunction to vacate a judgment of that court was not sworn to, is not well taken. The pleading upon which this contention is based is the second amended original petition, filed by plaintiffs on September 12, 1900, praying that the judgment in favor of Johnson be canceled and set aside and that he be perpetually enjoined from enforcing the same, and that plaintiffs have judgment removing the cloud from their title. It appears from this pleading that an original petition and a first amended original petition had prior thereto been filed by the plaintiffs. The record does not contain any of the pleadings of plaintiffs filed prior to the time of filing their second amended original petition. It may be presumed from the record that upon filing the original petition a temporary writ of injunction was issued. Johnson answered on September 3, 1900. W. R. Boyd filed his plea of intervention on September 5, 1900. No motion was made by defendants or intervener to dissolve the temporary injunction, nor was there any objection made to the pleadings on the ground that they were not sworn to. Article 2292, Revised Statutes, requiring a petition for injunction to be sworn to, applies where a temporary injunction is

sought during the pendency of the suit and prior to final trial. Edrington v. Allsbrooks, 21 Texas, 189; Echols v. Daniels, 16 Texas, 137; Love v. Howell, 67 Texas, 19.

In the condition of the record we must presume in support of the regularity of the proceedings that the original petition was sufficient to authorize the issuance of the temporary writ. Upon final trial a judgment awarding a permanent writ of injunction may be rendered, if, under the facts, plaintiff is entitled to the writ, although the petition upon which the case is tried is not sworn to.

2. It is contended by the appellants that the court erred in failing and refusing to direct a verdict for the defendants upon the facts, and especially in not giving defendants, under proper instruction, 600 acres out of the 800 acres owned by S. A. Daniel and wife, Jeffie Daniel, and for the balance of 514 acres claimed by plaintiff C. F. Daniel. If there is evidence which justified the jury in rendering the verdict they did, we are compelled to find against this contention. The petition sought to have the judgment by default, rendered on the 13th day of February, 1900, in favor of W. E. Johnson and against S. A. Daniel, Jeffie Daniel, and Gus Daniel, set aside and annulled. The term of the court during which said judgment was rendered had terminated. In such a case relief will not be granted unless the party seeking it can show that he was prevented from making a valid defense to the action by fraud, accident, or the act of the opposite party unmixed with fault on his part. Plummer v. Power, 29 Texas, 14; Harn v. Phelps, 65 Texas, 597; Merrill v. Roberts, 78 Texas, 30.

The ground for setting aside the judgment was the existence of smallpox in the family of the plaintiffs which prevented them from attending court, and an agreement by counsel representing the parties that the case should be passed to ascertain if plaintiffs could attend court, and if not, the cause was to be continued for the term. There was evidence both pro and con on the issue as to whether such an agreement had been made. This issue was submitted to the jury in a charge to which no objection is made, and the jury found in favor of the agreement. There is evidence supporting their findings. It was for the jury to settle the conflict in the evidence, and they having done so we do not feel authorized to disturb their verdict. Chase v. Neal, 83 Texas, 333; Sullivan v. Zardeneto, 30 S. W. Rep., 95; Blum v. Watson, 19 S. W. Rep., 357; Insurance Co. v. Lee, 19 S. W. Rep., 1030.

The evidence is uncontradicted that the Daniels were unable to attend court at the February term owing to the existence of smallpox in their family and the establishment of a quarantine against that neighborhood. It is shown that the defendants in the default judgment, and their attorney, had no knowledge that the judgment had been rendered, and did not learn of the same until after the adjournment for the term, and this suit seems to have been istituted without delay upon ascertaining that fact.

3. It is insited that the deed from Gus Daniel to Jeffie Daniel for

800 acres of the land shows on its face to be a conveyance to the community estate of S. A. and Jeffie Daniel, and that the husband, S. A. Daniel, ought not to be permitted to ingraft a trust upon the conveyance in order to defeat the title of the purchaser under execution against him. This contention does not fairly arise under the record. The court charged the jury as a matter of law that said deed vested the title of said land in the community estate of S. A. and Jeffie Daniel. The jury found, under other instructions which are not complained of, for appellee upon the issue that the law had not been complied with by the officer in making the levy and sale of the property and that the inadequacy of consideration was caused thereby.

4. It is contended that the court erred in overruling the motion for new trial, both of defendant and intervener, because the verdict of the jury is contrary to the law and evidence, in that it was proved that defendant W. E. Johnson had a valid judgment against S. A. Daniel in the Justice Court, precinct No. 1, Freestone County; that the issuance and levy of the alias execution and sale thereunder and the constable's deed, were all regular and conveyed a good title to the purchaser. W. E. Johnson obtained a judgment against S. A. Daniel for $86.70 on April 25, 1898. On October 10, 1898, an alias execution issued upon this judgment, and on the same day was levied upon the land in controversy. At the sale Johnson bid in the land, 1400 acres, for $75, and the bid was placed as a credit upon the execution. At the time of the levy S. A. Daniel had personal property subject to execution out of which the execution could have been made. The officer making the levy knew where Daniel lived, was acquainteod with him, but did not call upon him to pay the execution or to point out a levy. S. A. Daniel did not receive any notice of the levy from the officer making the same. The 1400 acres of land were at the time of said sale of the value of $5000. The court charged the jury that if they believed from the evidence the land when levied on, outside of the 200-acre homestead tract, was of such value that $75 would be grossly inadequate as consideration therefor, that is, such a price as no person of common judgment would regard it as fair, reasonable or honest; and if they further believed that S. A. Daniel was not notified of the levy of Johnson's execution by the constable, and was not called upon by said constable to pay the execution or point out other property for levy, and by reason of such facts the land was sold for less than it would have been, had said irregularities not existed, then the sale by the constable should be set aside, and in such event they should find for the appellees, and also find for Johnson the sum of $75 tendered in court by appellees. Appellants have not assigned error complaining of this charge, and they did not request any additional instructions of the court below. The jury found in favor of the appellee, setting aside the constable's deed. Where, as in this case, the amount of the bid is grossly inadequate, and the defendant in execution is possessed of personal property subject to execution sufficient to pay the debt, and has not been called upon to pay the exe-

cution or to point out a levy, and a levy is made by the officer upon the real estate, and he fails to give notice of the levy to the defendant in execution, the jury is justified in setting aside the constable's deed. Weaver v. Nugent, 72 Texas, 274; Irwin v. Furguson, 83 Texas, 495; Allen v. Pierson, 60 Texas, 604; Taul v. Wright, 45 Texas, 388; Jones v. Pratt, 77 Texas, 210.

Appellants, however, contend that prior to the sale S. A. Daniel had actual notice of the levy and that a sale was about to be made. The evidence shows that a few days prior to the sale S. A. Daniel learned that the land had been levied upon, and on the day of sale he and his son Gus went to the town of Fairfield to see the attorney who had represented him in that suit, and who is one of the appellants herein, in reference to the levy and sale, and was advised by said attorney to pay no attention whatever to the matter, but let the land sell, as the purchaser would not get any title. Acting on this advice he took no steps to stop the sale. Gus Daniel testified that he wanted to settle the execution, if the sale would pass a title. He was assured by the attorney that no title would pass by the sale. Actual notice of the sale to the defendant in execution will not dispense with the notice required by statute. The appellants can not insist, in view of the facts, that plaintiffs are estopped from attacking said levy and sale by reason of the fact that S. A. Daniel had notice of the levy before the sale was made.

It is further insisted that the $75 tendered by plaintiff to the defendant in court should have been left on deposit with the clerk. The defendants recovered judgment for this sum against all of the plaintiffs, and they were awarded execution therefor. The record does not show that the plaintiffs are insolvent. We conclude that these contentions are without merit.

5. It is contended that the court erred in overruling the motion of intervener, W. R. Boyd, for a new trial, for that the evidence showed a contract between Gus Daniels and W. R. Boyd by which Boyd was to get one-half of the 1600 acres of land, and it was not shown that the intervener had failed to carry out his part of the contract, or that he had abandoned the same. There was evidence from which the jury were justified in finding an agreement between Gus Daniel and W. R. Boyd, made in 1894, to the effect that Gus Daniel was to procure a deed from his father, S. A. Daniel, to 1600 acres out of the east half of the Chemar league in Freestone County, put the deed on record and move upon the land and occupy it for five years; that Boyd was to defend any and all suits that might be brought against the land, and pay one-half the taxes each year assessed against the land, and that at the end of the five years Gus Daniel, was to deed Boyd one-half the land, 800 acres. The other one-half of the taxes were to be paid by Gus Daniel. Gus Daniel did procure a deed from his father and had it recorded and moved upon the land. When the first taxes became due, he sent to Boyd and requested him to pay his one-half of the taxes and Boyd refused to pay. Boyd has never paid any of the taxes. The taxes were

paid by Gus Daniel. Gus Daniel dealt with the land as his own. In January, 1898, he sold and conveyed 800 acres of the land to his mother. Between January 1, 1899, and February 1, thereafter, Gus Daniel, by three separate conveyances, sold and conveyed to C. F. Daniel 514 acres of the land. C. F. Daniel conveyed 200 acres of the 514 acres to Watson Bros. At the time of these several conveyances the purchasers consulted Boyd as to the Gus Daniel title. He advised them that it was good. R. Harding had a judgment against Gus Daniel, and on December 6, 1898, W. R. Boyd, who was Harding's attorney, had an execution issued and levied upon the 1600 acres of land as the property of Gus Daniel. C. F. Daniel, at the request of Gus, paid it off and had the judgment transferred to him. The money was paid to Boyd. This was before C. F. Daniel purchased the land from Gus Daniel.

There is evidence to the effect that when S. A. Daniel conveyed the 1600 acres to Gus Daniel he was indebted to Gus, and that the conveyance was made in settlement of said indebtedness. There is evidence that when Mrs. Jeffie Daniel purchased the 800 acres from Gus she paid value for the same out of funds received by her for the sale of a former homestead, and that she had no notice of the agreement between Gus Daniel and W. R. Boyd in reference to the land. The issue as to whether the agreement between Boyd and Gus Daniel was made, and whether it had been abandoned by Boyd, and whether Mrs. Daniel and C. F. Daniel had notice of it at the time of their respective purchases and whether they paid value without notice of the same, were all fairly submitted to the jury.

The charge of the learned trial judge covered every phase of the case and was not objected to, nor were any additional instructions requested by appellants. The jury found in favor of the appellees on all the material issues, and there is evidence supporting their verdict. We conclude that the court did not err in overruling the intervener's motion for new trial.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*