## McCLELLAN v. KREBS.

### No. 14647.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 27, 1944.

Rehearing Denied Dec. 8, 1944.

Guy Rogers, of Wichita Falls, for appellant.

Otis E. Nelson and Ernest Robertson, both of Wichita Falls, for appellee.

SPEER, Justice.

Frank Krebs sued C. H. McClellan for temporary damages alleged to have been caused by diverting the natural flow of surface water onto his lands by means of contour ditches and terraces built and completed in the early part of 1939.

Parties will bear the same designation here as in the trial court. Plaintiff (Krebs) alleged that defendant's (McClellan's) land lies north of his own; the defendant's south line is common with a part of plaintiff's north line for a distance of about a half mile; that the natural slope of the surface of the ground on both tracts is from north to south; that the terraces were built of dirt taken from the top of the natural soil immediately north of and adjacent to the respective terraces; that after the completion of the terraces, the two most southern ones terminated on the southern edge of defendant's land and near to plaintiff's north line; that during 1939 said two terraces caught the rainfall, and caused the water to flow from their most southern ends onto plaintiff's land in a concentrated form in greater quantities, at those places, than it would have if the terraces had not been built; that to prevent such excess and concentrated flow defendant later constructed a ditch and small terrace just north of his south line and plaintiff's north line, from the ends of said terraces in a westerly course to carry the excess water a distance of about one-half mile to a natural water course; that said last mentioned ditch and terrace were insufficient to carry said water and that in late November or early December 1940 the levy broke and caused great quantities of water to flow therefrom onto plaintiff's farm lands resulting in washing the soil therefrom and forming great ditches such as he could not plow across and materially lessened the rental value of his said lands; he alleges what he terms the reasonable rental values before and after the things complained of for each of the years 1941, 1942, 1943 and 1944. He alleged the amount necessary to rebuild his land to its former state and sought recovery of the aggregate amounts of $1800 as temporary damage. There were other allegations made as a basis for injunctive relief. He asked that defendant be required by mandatory injunction to either level off the terrace so that the water would go over his land as it had originally done or in the alternative to raise a levy at the south end of the two large terraces so as to force the flow of water gathered in them back to the northwest and go over his own land, and that he be perpetually enjoined from maintaining said levies and terraces in such a way as to concentrate the water in large quantities across plaintiff's land.

Defendant (McClellan) answered with general denial and specially among other things that: (1) He had not caused a greater amount of water to pass onto plaintiff's land than would have gone upon it if the terraces had not been built, but that in fact the flow had been lsssened; (2) that plaintiff and defendant discussed the results and effect of said terraces in 1939 and mutually agreed that if defendant would dig a ditch and build a terrace along the dividing line to carry the excess water to the natural water course, all differences would be settled, that defendant complied with the agreement; and (3) that all damages sustained by plaintiff, if any, resulted from the construction by defendant of said ditches and terraces, which are permanent

in their nature, and that any cause of action he has or may have ever had arose more than two years prior to the institution of this suit and are barred by the statute of limitations. His prayer was that plaintiff take nothing, that he recover his costs and for general relief.

A jury verdict on special issues was favorable in all respects to plaintiff and judgment was entered thereon. Defendant has appealed.

Plaintiff instituted this suit by petition filed November 14, 1942, in which he sought permanent damages to his land, and it appears that different counsel subsequently filed a second amended original petition on January 17, 1944, upon which this trial was had. It will be observed from what we have already said, plaintiff now seeks recovery for only temporary damages.

The main terraces were completed in February 1939 and the ditch and terrace on the dividing line was constructed perhaps in July 1939. All parties and other witnesses testified the terraces and ditches, made to borrow dirt to build the terraces, were permanent; the jury found they were permanent in nature.

Defendant's first point of error complains that the trial court should have given effect to the two years statute of limitation. We think, and apparently the parties believe, this is the controlling point in the appeal.

The principle of limitation involved here will be determined by the time plaintiff's cause of action arose. When the right of action arose must be determined by the facts surrounding the situation.

Defendant's land was so situated that certain portions sloped generally to the south toward plaintiff's property. Defendant, in February 1939 completed a series of terraces with such necessary ditches as were required to furnish dirt for the elevated terrace, all on his own land; three or more of the terraces on the most northern part were so constructed, on an approved system of levels, as to divert the water falling north of each onto his own property, in this way lessening the total amount that would have gone across plaintiff's land if left undisturbed. The two most southern terraces were each a mile or more long when followed in their meanderings to find proper levels; they extended in a general southeasterly direction

from a point near defendant's west line, and ended on or near the dividing line between the two tracts of land; twice during 1939 heavy rains fell and plaintiff testified that water coming from the two terraces came down the dividing line about three hundred feet and onto his land washing away some soil (the extent of which is not revealed). That on one of such occasions some wheat shocks were washed away and he retrieved much of it a mile below; plaintiff apparently minimized the effect of these occasions; plaintiff said that cultivation leveled off the washing that occurred in 1939; that he called the effects of it all to the attention of defendant, who thereafter in 1939 dug a drainage ditch a foot or more deep placing the dirt therefrom on the down side, just north of the dividing line from the end of the terraces west about a half mile to a natural water course, for the purpose of conveying the water westward which should come from the two offending terraces; this drainage ditch passed over a "swag" or low place in the land; plaintiff said the drainage ditch practically took care of the excess flow until in 1940 and 1941 when defendant began a different system of plowing—that there was practically no damage done before that time. That afterwards, "the flooding was ten times greater." That in late November or December 1940 the drainage ditch had gotten filled up in the low place or swag and the water broke over the small levy and came across plaintiff's land and washed away the soil over a broad area and created a ditch which prevented cultivation across it; from plaintiff's point of view it presented a very bad situation; he testified that subsequent overflows have deepened and widened the ditches and materially lessened the annual rental values of his land. The jury verdict found the reasonable rental values for the years 1941, 1942, 1943 and 1944 if the overflows had not taken place, and what it was during those years in its then condition after the overflows. Likewise, the jury found the reasonable and necessary expense of filling the ditches and restoring the land to its condition before the injuries complained of. Upon these findings the court entered judgment for plaintiff for all said items aggregating $969.60. There was ample evidence to support the jury findings. Much of the testimony revealed by the statement of facts is unintelligible to us, for the reason counsel and witnesses evi-

dently had before them maps, pictures and plats referring to them by pointing out places thereon.

■ As above indicated, plaintiff originally filed his suit seeking permanent damages to his land, but by other counsel he filed a second amended original petition upon which trial was had, seeking only temporary damages The original pleading was thus abandoned, and we think its terms are not controlling here, but that the amended pleading alone must be considered by us. The original pleading was intro duced in evidence by defendant and was no doubt considered by the jury for what ever it was worth.

It is clear to us that from the case as made, whether or not the construction and maintenance of the terraces and ditches made by defendant would necessarily result in injuries to plaintiff, depended upon the manner of their maintenance by defendant. In response to issues the jury found that the terraces were permanent in nature, that their construction and continuance were not necessarily injurious to plaintiff, that such injuries as plaintiff has sustained were caused by the manner in which the terraces were maintained, and that plaintiff had sustained no permanent injury to his lands. It was also found that defendant had, since January 1, 1941, failed to maintain an adequate drainage ditch along the south boundary line of his land, that such failure was negligence and proximate cause of plaintiff's injuries. It necessarily follows that if plaintiff's damages resulted from the negligent maintenance of the drainage ditch by defendant since 1941, and although defendant's improvements were permanent in their character and were not necessarily injurious to plaintiff, and plaintiff had suffered no permanent damage to his land, his cause of action did not arise at the completion of the improvements.

The record indisputably shows that the nuisance to plaintiff's property resulting from the terraces could be abated by either a maintenance of the drainage ditch on his south line or at the small expense of approximately $100.00 closing the most southern ends of the two long terraces, removing small "humps" a few inches in height in the ditches and causing all the water therein to flow northwest onto his own pasture land.

In Rosenthal.v. Taylor, B. & H. R. Co., 79 Tex. 325, 15 S.W. 268, the court discusses a situation very similar to the one be-fore us; at page 269 of 15 S.W. this is said: "When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have accrued only up to the time of the action will be allowed."

If plaintiff's cause of action arose at the time of the completion of the ditches and terraces, it could have been only one for permanent damages to the land, and would have been barred by limitation when he instituted the suit in November 1942. The measure of damages would have been the difference, if any, between the reasonable market value of the land just before the injury and what it was just afterward. If, under the facts and circumstances here, his injuries were temporary, a different measure would have been applied and those accruing within two years preceding the filing of suit were not barred.

It must be conceded that the improvements on defendant's land were permanent in character. Defendant so pleaded and the undisputed testimony so shows them to be. The jury answered a special issue finding they were permanent. However, the permanent nature of the improvements on defendant's property is not necessarily the test of whether the results and effect of them are likewise permanent. Under authority of Rosenthal v. Taylor, B. & H. R. Co., supra, if the injury is dependent upon the effect such improvements will have on another's property, if the owner should neglect to exercise ordinary care in its use, or fail to abate its damaging effect when it can be done at a reasonable expense, the results and effect, in law, become a nuisance and the action lies for temporary damages within two years after it actually accrues.

The settled rule seems to be that if, as in this case, defendant's improvements are wholly upon his own property—have not in any way invaded the lands of plaintiff, and a prudent maintenance of the drainage ditch running east and west, would prevent injury to plaintiff's land, or if under the circumstances the results and effect of the improvements become a legal nuisance to plaintiff at intervals, dependent upon accidents and contingencies above pointed out, plaintiff could recover, as against limitation within two years next after the damages accrue. Austin & N. W. R. Co. v. Anderson, 79 Tex. 427, 15 S.W. 484, 485, 23 Am. St.Rep. 350. After discussing principles under varying conditions, the court in the last cited case said: "The just and rational rule,

as adopted in this state (referring to the rule stated by us above), is that successive actions may be brought for the injuries as they occur."

The same doctrine is announced in Parsons v. Uvalde Electric Light Co., 106 Tex. 212, 163 S.W. 1, 2, L.R.A.1916E, 960. That case involved limitation as does the one at bar. The Light Company constructed its plant and operated it on its own land; Parsons owned a home adjacent thereto and when the wind was from a certain direction, smoke, cinders and odors came into the home and caused inconvenience and even sickness of the family. It was held that the light plant was permanent in its nature, yet the nusiance feature was temporary and successive suits could be maintained within the limitation period after the incident occurred. After announcing a rule applicable to permanent damages, the court stated the rule to be: "But when such structure (the light plant) is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recoveries as there are successive injuries." Our courts have consistently recognized the principles which we have applied to the question of limitation. They draw a distinction between the time causes of action accrued in suits for permanent and temporary damages. See Ft. Worth & D. C. R. Co. v. Speer, Tex.Civ.App., 212 S.W. 762, 764; Wichita County Water Imp. Dist. No. 1 v. Pearce, Tex.Civ.App. 59 S.W.2d 183; Lone Star Gas Co. v. Hutton, Tex.Com.App., 58 S.W.2d 19. The last cited case had the approval of the Supreme Court and quotes with approval the holding on temporary damages discussed in Ft. Worth & D. C. R. Co. v. Speer, supra.

The general principles involved in damages to real estate under given conditions are stated in 34 Amer.Jur., 106 Sect. 131, in this language: "Where the original act or cause of injury is permanent in nature, and the damages, both present and prospective may be recovered in one action, the statute (of limitation) will generally be regarded as attaching at the time the act complained of is done. * * * Again, where an act is not necessarily injurious or is not an invasion of the rights of another, and the act itself affords no cause of action, the statute of limitations begins to run against an action for consequential injuries, resulting therefrom only from the time actual damage ensues. The principle is applicable where the structure, although permanent in its character, is not necessarily in itself a permanent and continuing nuisance, but only becomes such in consequence of some intervening cause which produces special injury."

To sustain his contention that plaintiff's action was barred when suit was filed, defendant relies upon the first of the two general rules announced above and makes the application to this case to the effect that when defendant constructed his permanent terraces, they necessarily produced injury to plaintiff's property, therefore, the cause of action arose when the terraces were completed in the early part of 1939. Of course if defendant's application of the rule to this case is correct, his point is well taken and plaintiff's suit was barred by limitation in two years. He cites among others cases of City of Athens v. Evans, Tex.Com.App., 63 S.W.2d 379; City of Texarkana v. Rhyne, 126 Tex. 77, 86 S.W.2d 215; Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221; Blondeau v. Sommer, Tex.Civ.App., 139 S.W.2d 223, writ refused.

We have carefully studied these cases and find that in each instance where the other conditions, such as we have mentioned, arose the court draws a distinction between them and those there decided. Cognizance is taken of the distinction between permanent instrumentalities which will of necessity cause damage to another and those which will produce that result only upon some contingency which may or may not happen; such as subsequent negligence by the owner in their operation, or failure to abate the injurious effect of the instrumentality when it can be done at a reasonable expense. These matters are important in this case for the reason plaintiff sought, among other things, a mandatory injunction requiring defendant to do certain things in connection with his ditches and terraces to prevent future damages such as those complained of, and the judgment as entered concludes with this language: "And it having been made known to the court by both parties hereto that subsequent to the trial of this cause, and prior to rendition of judgment herein, that the defendant has duly erected, constructed and extended the terraces upon his land and has made the changes and performed the work on said terraces as prayed for by the

plaintiff, and that by reason thereof no reason or necessity exists at this time for the issuance of a mandatory injunction herein, said mandatory injunction is therefore denied." The court did, however, order the issuance of a permanent injunction enjoining defendant from diverting the natural flow of the surface water from his land so as to overflow the land of plaintiff.

 It appears to us from the record as a whole that the construction of the ditches and terraces by defendant upon his own property, although permanent in their character, does not necessarily mean that they would produce injury to plaintiff; but the result depended upon a proper maintenance of all ditches and terraces including the drainage ditch which apparently was negligently permitted to fill and cause the overflow. The jury found this to be true and that it was negligence and proximate cause. Then, too, it is obvious by the recitation in the judgment above quoted and from the testimony of the engineers that the hazard to plaintiff could be abated at a small expense. Apparently defendant has chosen to abate the nuisance in one of the suggested ways. We, therefore, overrule the point that plaintiff's cause of action is barred by limitations.

Defendant's second point of error complains of the definition given by the court of the word "permanent." The definition reads: "The term 'permanent' as used in connection with damage to land carries with it the idea of something that is durable, lasting, that never changes; an injury that lasts for a time only, even though it be several years, cannot be deemed permanent."

Defendant timely objected to the charge quoted and especially complained of the words "that never changes" because the term is too embracive. His objection goes to the concluding phrase also because he says: "A damage may be permanent and last for a time only, depending upon the kind and character of the damage done."

 Plaintiff replies to the point by saying defendant is not entitled to urge it because he did not submit to the court and request the giving of a definition substantially in proper form for submission, and cites Rule 279, Texas Rules Civil Procedure. The rule cited is not applicable to a situation where, as in this case, the court did not fail to submit a definition, but the court in fact did submit one, of which complaint is made. Case of Great American Indemnity Co. v. Sams, Tex. Sup., 176 S.W.2d 312, cited and relied upon by plaintiff, does not support his contention. There it is held that the court had given certain explanations and that appellant's counsel did not object to the charge given, but was requesting the trial court to give additional instructions. It was held that the appellant was in no position to complain at the refusal because it had not submitted a charge substantially suitable to be given.

The issue of permanency arose in two ways in the case at bar: (1) Whether or not defendant's terraces were permanent in nature, and (2) whether or not the injuries sustained by plaintiff to his land were permanent. Defendant pleaded and contended throughout the trial that his improvements were permanent; he proved it and the jury so found. If the definition given by the court was too embracing, and required of him a burden of proof greater than required by law, he certainly was not hurt, for he discharged it and secured a favorable finding of fact. Referable to whether or not the damages sustained by plaintiff were permanent, we must take into consideration the subject matter before us. The case was pleaded by plaintiff and tried upon the theory that the injuries sustained by plaintiff's land were not permanent but temporary. Defendant contended the damages sustained were permanent. The jury found in response to a special issue that there was no permanent injury. It is obvious that the jury considered that such damages to the land as had been sustained could be remedied and restored and therefore such damages could not be permanent—durable, lasting, never changing.

In Indiana Co-op. Canal Co. v. Gray, Tex.Civ.App., 184 S.W. 242, 243, writ refused, recovery was sought for permanent damages caused by water seeping from a canal and water-logging adjacent land. Full value of the land before the injuries was sought and recovered. The evidence showed the seepage had been stopped and the land, after a time, had been restored to its original usefulness. The opinion indicates that the trial court had instructed the jury, concerning permanency of the injuries, to the effect that injury to land that lasts several years would be considered permanent. In this respect the appellate court said: "Undoubtedly it was a serious injury to impair the usefulness of the land

for any length of time, but an injury that lasts for a time only, even though it be several years, cannot be deemed permanent, and the court erred in so instructing the jury. Permanency carries with it the idea of something that is durable, lasting, that never changes. An injury to land may be in its nature permanent as distinguished from the injury to the crops on it, but it might as well be said that eternity is a greater lapse of time, as to say that a thing is permanent that is cured in a few years." It will be observed that the definition of "permanent" as given by the trial court in the instant case was in substantially the same language as that used by the appellate court, and approved by the Supreme Court, in the case from which the quotation was taken. We see no error in the point raised, and it will be overruled.

■ Third point asserts error of the court in excluding testimony tendered by defendant to the effect that he had constructed his terraces under the direction of and partial cost of the Federal Government. No error is presented by this point. Granting that he did do all he proposed to prove is no defense to his failure to use ordinary care to maintain them. It would not have relieved him if the negligence of not maintaining the drainage ditch pleaded by plaintiff and found by the jury caused the damage.

■ Point four is rather complicated since it complains of the submission of numerous special issues. What we have concluded should be said thereon will not be helpful as a standard because of the numerous issues involved. This point complains of the submission of Special Issues 2, 2A, 3, 4, 5, 6, and 7. By special issue No. 1, of which no complaint is made, the jury found that defendant had maintained terraces on his land during the period since 1941 in such manner as to divert the natural flow of surface water across his land. By No. 2 (complained of), that by such diversion he has caused the water to flow across plaintiff's land; No. 2A, that such diversion and overflow have caused damage to plaintiff's land; No. 3, the acts of defendant in diverting the water were negligence, and No. 4, was proximate cause; No. 5, that during the period since 1941 defendant has failed to maintain an adequate drainage ditch along his south line to carry off said surface water; No. 6, such failure was

negligence, and No. 7, was a proximate cause.

Objections urged are lengthy, but may be summarized by saying No. 2 was predicated on No. 1, and even if the water did overflow plaintiff's land, it would be immaterial unless damages resulted. No. 2A is predicated on No. 2, and is of no consequence unless injuries resulted. Objection to No. 3 was predicated upon the theory that the terraces were permanent without the necessity of maintenance at all, and that such inquiry was immaterial. He objected to other issues of negligence and proximate cause for the reasons they were based on named issues which determined the facts.

There is no merit in the objections, because issue No. 1 inquired only about the period of time since 1941 and inquiries of the results and damages necessarily had to be based thereon; it would have been highly improper to have embraced in one question: Diversion, if it went across plaintiff, was it negligence and proximate cause? Same is true concerning No. 5, inquiring if defendant failed to maintain a drainage ditch, and No. 6, was it negligence, and No. 7, was it a proximate cause?

■ Fifth point assigns error in the submission of special issues 8, 9A, 10A, 11A and 13. First four of these issues inquired as to what was the reasonable rental value of plaintiff's land in 1941, 1942, 1943 and 1944 respectively "except for the negligence, if any, inquired about in issue No. 3 and No. 6 of the defendant." If we properly interpret the objections made they are substantially, because the inquiry is not limited, in point of fact, to any negligence of defendant from which consequential damage would flow, to two years before suit and that they inquire generally about negligence at no particular time or act, and permits the jury to answer concerning any item of negligence it may think it has a right to consider. We must assume that the jury understood the inquiries made and only considered the negligence inquired about in issues 3 and 6. These inquiries did not leave open the right of the jurors to return their answers based on damages other than those to which the issues confined them. Issues 3 and 6 were inquiries of negligence based on acts done "during the period since 1941." Limitation by the court as was done, was equiva-

lent to an explanatory charge in connection with special issues, which limits recovery to a given time or incident. In the latter instances defendant's objections are answered against him, in Grocers Supply Co. v. Stuckey, Tex.Civ.App., 152 S.W.2d 911, writ refused; Clowe & Cowan v. Morgan, Tex.Civ.App., 153 S.W.2d 863, writ refused.

■ Sixth point asserts error of the trial court in perpetually enjoining defendant "from diverting the natural flow of surface water from his land to that of plaintiff." The point thus made was embraced in his motion for new trial and was based upon the assertion that there was no competent evidence or sufficient pleading to authorize the rendition of such portion of the judgment. The injunctive relief sought by plaintiff in this respect was an incident to his suit for temporary damages and an effort to avert a repetition of what plaintiff claimed defendant had done. There was a single petition in which damages and the injunctive relief were sought. The petition was not sworn to. No special exception was urged to the petition for lack of verification. Defendant answered joining issues and tried the case out on its merits. Based upon the jury findings and uncontroverted facts the court ordered the perpetual injunction mentioned.

Rule 682, Texas Rules Civil Procedure, provides that no writ of injunction shall be granted unless the petition presented by the applicant shall be verified by his affidavit, and shall contain certain other requisites. This is the language of Article 4647, R.C.S., unchanged.

Rule 90 T.R.C.P. abolishes the use of general demurrers and provides that every defect in a pleading which is not specifically pointed out by motion or exception shall be deemed to have been waived by the party seeking reversal for such defects.

The provisions of Art. 4647, supra, have been present in our statutes since 1846. As early as Eccles v. Daniels, Adm'r, 16 Tex. 136, 137, our courts have construed that article to mean that its mandatory effect was applicable only to petitions for temporary writs of injunction. After a lengthy discussion of the statutory provisions this was said: "Upon the whole, considering the objects sought in a suit for injunction, and the general policy of our system of procedure, we are of opinion that a petition or answer in a suit for injunction, as a portion of the final relief is not, for the want of an oath, to be regarded as a nullity, but is to be esteemed as sufficient for the purpose of admitting proof on the final hearing." See also Johnson et al. v. Daniel et al., 25 Tex.Civ.App. 587, 63 S.W. 1032; Smith v. Palo Pinto Co., 60 Tex.Civ.App. 531, 128 S.W. 1193 and Brown v. Munger Farm Co., Tex.Civ.App., 87 S.W.2d 527. Under these authorities we overrule the point of error.

■ Under his seventh point of error, defendant argues with much sincerity that the several findings of the jury, as we have related somewhat in detail in this discussion, are in hopeless conflict and cannot form the basis of a judgment. He insists that when the jury found that the surface water was diverted by defendant onto plaintiff, and that the construction of the terraces were not necessarily injurious to plaintiff's land, such findings are not reconcilable with other findings to the effect that the terraces, permanent in nature were constructed in 1939 and did cause water to overflow on plaintiff's land in 1939. Viewing the pleadings and testimony as we understand them, we are unable to agree with defendant that there are irreconcilable conflicts in the verdict.

The eighth point of error complains because the court refused to sustain defendant's motion for judgment upon or non obstante veredicto. Apparently the point is brought forward as an additional reason why other points present reversible error. We know of no reason why it should have been sustained unless we have erroneously interpreted the preceding points and misapplied what we perceive to be the law applicable.

From what we have said in this all too long discussion, it is apparent that we see no error in the record requiring a reversal and the judgment will therefore be affirmed.