### CITY OF FORT WORTH v. BAKER.

No. 14865.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 26, 1947.

Rehearing Denied Oct. 24, 1947.

R. E. Rouer, Heard L. Floore, and Sam A. Woodward, all of Fort Worth, for appellant.

Slay & Slay, W. H. Slay, Jr., and Robert Harrison, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

The case alleged in plaintiff's petition is in substance as follows: Plaintiff owns a tract of about ten acres of land lying adjacent to the West Fork of the Trinity River, in the city of Fort Worth. The land is bounded on one side by a street known as University Drive, which lies on what might be called the downstream side of the land. Plaintiff owns and operates on said land a retail floral business, and a nursery business which includes the raising and selling of plants, flowers, shrubbery, and the like. The property was previously owned by a corporation, but the corporation was dissolved in 1944, and plaintiff became the sole owner of the assets of the corporation. The corporation, and since its dissolution the plaintiff, have for many years profitably conducted said business on the property, and there has been erected thereon a retail floral shop, and other improvements which are described in detail in the petition. The property is located within the flood channel of the river, said flood channel being approximately 2400 feet wide where plaintiff's property is located. University Drive crosses the river at such point.

In March of 1937 the City of Fort Worth completed the construction of a large bridge where University Drive crosses the river. The bridge, together with its approaches and embankments, presents an obstruction in the flood channel of the river of an overall length of approximately 830 feet. In March of 1945 rains fell in the shedwater area of the river of sufficient magnitude to cause an overflow in the flood channel of the river. The bridge, and the embankments and approaches leading to it, unlawfully obstructed the natural flow of water in the flood channel of the river so as to impound and divert great quantities

of water and throw them on plaintiff's property, to a greater depth and in greater velocity than otherwise would have occurred. Damages therefrom are alleged in detail. The property has been subject to overflow for many years from time to time in the past by slow and gradually moving backwater which flowed along the flood channel of the river, but such overflows did little or no damage, and in fact did in many instances benefit the property by leaving deposits of silt on the land. It is alleged that items of personal property lost or destroyed in the flood were of the value of more than $17,000. Damage was also done to buildings on the land causing a depreciation in value of the land in the amount of $12,500. The prayer is for recovery of damages in the sum of $30,374.60.

The defenses set up in defendant's pleadings are in substance as follows: First, a general denial is interposed, then special pleas of limitation, both of two (Art. 5526, Revised Civil Statutes) and four (Art. 5529) years. Next is a plea based on an alleged release of a joint tort-feasor, which will not be discussed in view of the disposition we make of the case. Then it is specifically alleged that the bridge is a permanent structure, and that the damages suffered by plaintiff, if any, were complete, permanent and continuing from the time the bridge was built. Other allegations follow which we shall not describe, and then it is alleged, among other things, that the opening of University Drive as a thoroughfare, and the building of the bridge, brought about a great enhancement in value of plaintiff's property, and that the special benefits accruing to plaintiff therefrom were far in excess of any damages suffered.

In a supplemental petition, plaintiff alleges, among other things, that if any special benefit accrued to plaintiff by reason of the opening of University Drive and the building of the bridge, such benefits were previously offset by damages incurred by reason of a flood in April of 1942. It is alleged that at said time the bridge, and its embankments and approaches, diverted water in the flood channel of the river, causing them to flow over plaintiff's land at a greater depth than they otherwise would have, had the bridge obstruction not been present; that on the occasion of the 1942 overflow plaintiff was conducting a nursery business on said property and suffered damage to his nursery stock in an amount which was equal to or greater than any benefit which the plaintiff or his property may have received by virtue of the opening of University Drive.

The case was tried to a jury, which made the following findings in response to special issues: (1) The construction and maintenance of the bridge and its approaches caused the overflow waters of the river to rise to a greater depth than they would have risen had said bridge and approaches not been in existence. (2) The depth of overflow of water, caused wholly by the construction and maintenance of the bridge and its approaches, was one foot and six inches. (3) The depth of overflow would have been three feet and six inches if the bridge and its approaches had not been in existence. (4) Personal property of plaintiff situated on said land was damaged or destroyed by the flood waters on the occasion in question, (5) in the amount of $12,500. (6) Plaintiff's loss by reason of the damage or loss of personal property from the overflow would have been $6,250 if the bridge and its approaches had not been in existence. (7) The damage to the personal property caused solely by water which was caused to rise by reason of the existence of the bridge and its approaches amounted to $6,250. (8) The cash market value of the real estate was diminished in the sum of $13,500 by reason of the overflow waters on the occasion in question. (9) Such value would have been diminished $10,500 if the bridge and its approaches had not been in existence. (10) Such value was diminished in the amount of $3,000 solely because of the increased depth of the water which rose over the land by reason of the existence of the bridge and its approaches. (11) $5,000 was the reasonable value to plaintiff in the conduct of his business of his office records which were lost in said overflow. (12) The construction and location of the buildings on plaintiff's land and the trees and shrubbery on the premises caused the flood waters to rise to a greater depth and to flow with increased velocity over the premises, which

(13) caused one per cent of the damages suffered by plaintiff. (14) The rain and consequent overflow were not unprecedented or extraordinary. (15) Plaintiff's land and premises received special benefits by reason of the construction and opening of University Drive and the bridge with its approaches, (16) the value of which benefits amounted to the sum of $3,000.

Judgment was rendered on the verdict in favor of plaintiff for the sum of $11,137.50. Defendant City of Fort Worth has appealed.

Appellant first presents in its brief the defense of the two year statute of limitations, arguing that its structure was a permanent one, completed in 1937, more than two years before the present suit was brought, and that by plaintiff's own pleadings it is established that damage was done to plaintiff's property by reason of the bridge and its approaches in 1942, more than two years before this suit was filed. Plaintiff seeks to avoid the defense of limitation on the theory that the erection of the bridge and its approaches was not an unlawful act, nor one that constituted any invasion of plaintiff's rights or property at the time it was built, and that damages resulting therefrom were not of a continuous and permanent character, but were only such as would be suffered at infrequent intervals, depending on accidents and contingencies. Defendant's theory is that the damage, if any, was a permanent damage, such as would have to be recovered in a single suit, while plaintiff contends that the damage sued for was of a temporary character, and that successive actions could be brought after each flood to recover the damages then suffered, or rather, such damages as had been suffered within the two year period next preceding the filing of the suit.

At the outset, we shall say that it is perhaps not possible to harmonize all of the language that may be found in the reported opinions concerning the question of limitation, unless the language in each opinion is carefully read and interpreted in the light of the factual situation in each case.

In Houston Water-Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36, it is declared that if the act causing the damage was in itself lawful as to the person who bases an action subsequently accruing from, and consequent upon, the act, a cause of action would not accrue until injury should be sustained. If, however, the act causing the damage was a legal injury, giving right to a cause of action by reason of being an invasion of a right of plaintiff's, then, be the damage however slight, limitation would begin to run from the time the wrongful act was committed, and would bar an action for any damages resulting from the act, although such damages were not fully developed until within a period less than necessary to complete the bar.

There have been many cases against railroads for damages caused by failure to provide adequately for drainage of water where the railroads have built culverts or bridges, or have erected embankments. In most of such cases the courts have held that the building of the railroad structure was not wrongful as to the plaintiff, that no cause of action accrued until the plaintiff suffered damage, and that the measure of recovery should be for the temporary damage. In such cases it has also been held, consequently, that limitation would begin to run each successive time a temporary damage occurred. For an example see Austin & N. W. Ry. v. Anderson, 79 Tex. 427, 15 S.W. 484, 23 Am.St.Rep. 350. There it was said that the building of the embankment and the culverts was not of itself a nuisance, nor an invasion of plaintiff's rights, but became so only at intervals, by diverting rainfall from its usual flow upon plaintiff's land. It was said that the embankments and culverts were permanent, but that the nuisance was not, and that there was not a constant and continuing injury. But in Rosenthal v. Taylor, B. & H. Ry. Co., 79 Tex. 325, 15 S.W. 268, 269, it was held, on a state of facts rather hard to distinguish from those in the case just cited, that the nuisance was permanent, and that the proper measure of damages was the depreciation in the value of plaintiff's land. The test laid down by the court reads as follows:

"The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the plaintiff is entitled. When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have accrued only up to the time of the action will be allowed; but if the nuisance is permanent, and the injury constantly and regularly recurs, then the whole damage may be recovered at once."

In Clark v. Dyer, 81 Tex. 339, 16 S.W. 1061, it was held that overflow damages resulting from inadequate openings in a railroad culvert were temporary in nature, that the plaintiff had his action for damages occasioned by each overflow, and that limitation commenced to run from the occurrence of each overflow. When the entire opinion is carefully examined, it is apparent that the court considered that the railroad had been guilty not merely of a wrongful act in failing to provide originally for adequate drainage, but that, by reason of the provisions of the statute imposing on the railroad the duty to provide adequate drainage, the railroad had breached a continuing duty of maintaining their culverts in such condition that sufficient drainage would be provided. The court declared that the wrongful act of the railroad in failing to comply with the statutory duty of maintaining the embankment with proper culverts to carry off the surface water was the primary cause of the injury.

Parsons v. Uvalde Electric Light Co., 106 Tex. 212, 163 S.W. 1, L.R.A.1916E, 960, is another leading case. There the plaintiff, a nearby landowner, sued for depreciation in the value of his land, and for personal injuries suffered by himself and his wife, alleged to have been caused by the manner of operation of defendant's industrial plant. Plaintiff dismissed as to his suit for damages to his land, and the trial court, in charging the jury, limited the recovery for personal injuries to those suffered within two years prior to the filing of the suit. The defendant contended that the suit was barred by limitation within two years from the completion of the plant and the commencement of the operation of the machinery. The court, citing Austin & N. W. Ry. Co. v. Anderson, supra, held that the nuisance was not permanent and continuing, but was of a temporary or transient character. In analyzing the opinion in the Parsons case, it is to be noted that the suit as tried was not one for damage to plaintiff's land, and had no direct connection with his ownership of the land. His suit was one for personal injuries, resulting from smoke, dust, cinders, and "other things which originated in and continued with the operation of the said machinery," to quote from the statement of the case in the opinion. It is apparent that if defendant was guilty of any actionable wrong in permitting the smoke, cinders, etc., to escape and injure plaintiff and his wife, the question of limitation would depend not on the date of construction of the plant, nor the time when smoke first began to escape from the premises, but the date when plaintiffs encountered such substances and became injured thereby. The case, though often cited along with the case of Houston Water-Works v. Kennedy, and others of like import, is not, we believe, the same character of case, nor is it like the case before us.

Fort Worth & D. C. R. Co. v. Speer, Tex.Civ.App., 212 S.W. 762, cited by appellee, is another railroad culvert case, and adds nothing to the authorities above cited.

In Wichita County Water Improvement District v. Pearce, Tex.Civ.App., 59 S.W.2d 183, it was held that the nuisance was to be treated as a temporary rather than a permanent one, but from the entire opinion it appears that the defendant was charged with violating a duty of operating and maintaining the structures in a proper manner, rather than with improper construction of them in the first place.

In Abilene Light & Power Co. v. Clack, 58 Tex.Civ.App. 129, 124 S.W. 201, it is held that where the structure constituting the nuisance is a permanent one, and the injury is constant or certain to occur, the whole damage may be recovered at once, and limitation will begin to run at the time suit could be brought.

In City of Texarkana v. Rhyne, Tex. Com.App., 86 S.W.2d 215, plaintiff sued for damages alleged to have accrued by reason of the construction of a permanent street improvement, consisting of the walling and covering of a natural water drain with concrete. The claim was that water was caused to be diverted and to overflow onto plaintiff's premises. Plaintiff alleged that the damages were of a recurring and continuing nature. It was held that the damages were of a permanent nature, and to be recovered in one action, and to be measured by the depreciation in value of the property.

In City of Graham v. Moseley, Tex.Civ. App., 254 S.W. 130, writ of error dismissed for want of jurisdiction, where the defendant was charged with contaminating the waters of a creek by emptying sewage from its disposal plant into the creek, it was held that the nuisance was temporary and removable, and that the measure of damages was that which had been suffered within two years before filing suit, and not the depreciation in value of plaintiff's land. But in Missouri-Kansas-Texas Ry. Co. of Texas v. Williams, Tex.Civ.App., 5 S.W.2d 575, writ refused, the railroad company was charged with the pollution of a creek running through plaintiff's land by emptying into the creek oil, sewage, and other waste from the railroad company's terminal yards. In passing on a plea of limitation, the court held that the nuisance should be treated as permanent, and to be distinguished from the culvert cases.

The opinion in City of Athens v. Evans, Tex.Com.App., 63 S.W.2d 379, discusses at length the question of limitations, and reviews many of the decisions. It was charged that the manner of paving a street caused water to overflow and stand on plaintiff's land. The distinction was noted between the cases where the structure is permanent, but its construction and continuance are not necessarily injurious, and may or may not be so, and the cases where the nuisance is of a permanent character, and its construction and continuance are necessarily an injury. Under the facts of the case, it was held that the claim was barred because the injury continued from and after the time the paving was done.

Damages resulting from seepage from defendant's dam was held, in Williams v. City of Dallas, Tex.Civ.App., 52 S.W.2d 373, to be recoverable in a single action. Again we find the distinction observed between nuisances which are permanent in their character and those which are temporary.

In International & G. N. R. Co. v. Gieselman, 12 Tex.Civ.App. 123, 34 S.W. 658, defendant was charged with maintaining a ditch which caused water frequently to overflow on plaintiff's land. The suit was held to be barred by reason of a recovery on the same cause of action in a former suit. The damage was held to be a permanent one, giving rise to only one cause of action.

City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57, is an important decision in this field of the law. The City constructed a system of storm sewers which diverted flood waters from their natural drainage and onto plaintiff's land. The overflows occurred several times within a calendar year. The court held that in such a case as the one then under review, where it was uncertain at the time of the construction of the improvements whether or not the improvement would result in damages to the plaintiff, that the plaintiff had the right to wait and see what the result would be when the improvements were subjected to an actual test. The court held that the case fell within the rule allowing damages for a permanent as distinguished from a temporary nuisance.

In the City of Texarkana v. Rhyne, supra [86 S.W.2d 216], we find this statement:

"If the instrumentality which creates the injury is permanent in its nature, as distinguished from one which is only temporary or of such character as its injurious effects can be easily remedied, the proper rule is to recover all damages in one suit, and the measure of damages is the diminution in value of the freehold estate, even though the flooding of the property happens only occasionally."

In support of its statement the court cites Rosenthal v. Taylor, B. & H. Ry. Co., supra, and also Fidelity Trust Co. v. Shel-

byville Water & Light Co., 110 S.W. 239, 240, 33 Ky.Law Rep. 202. In the last cited case the defendant constructed a dam which impeded the flow of water and caused it to overflow plaintiff's land. The following is taken from the court's opinion:

"The question is not whether the injury is a continuing one, but whether the improvement or structure that causes the injury is permanent. If the improvement is permanent, the party seeking to recover damages is entitled to the diminution in the market value of the property injured, although the overflow or flooding as in the case before us is not continuous, but only happens occasionally."

Associate Justice Speer, of this court, in McClellan v. Krebs, Tex.Civ.App., 183 S. W.2d 758, 762, writ refused for want of merit, referred to "the distinction between permanent instrumentalities which will of necessity cause damage to another and those which will produce that result only upon some contingency which may or may not happen * * *."

Kolberg v. Hidalgo County Water Improvement Dist., Tex.Civ.App., 110 S.W.2d 961, was a suit to recover damages caused to plaintiff's land by seepage of water from an irrigation canal built on the land of the defendant. It was held that the cause of action arose when plaintiff's land was first visibly affected by the seepage, and that a suit brought more than two years thereafter was barred by limitation.

Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438, 128 A.L.R. 757, is another application of the rule that a plaintiff must, in a proper case, sue for his entire damages, even though he may not with certainty then know what the extent of the damages may be.

█ The dominant theme in plaintiff's argument in the case before us is that the damage done in 1942, and that done in 1945, must be regarded as temporary, and that the damage cannot be regarded as permanent, because the floods were not constant and continuing, but occurred only twice from the building of the bridge in 1937 to the filing of suit in 1946. When we consider all that is said in the opinions above cited, in

the light of the facts before the court when each opinion was written, we are driven to the conclusion that the case before us is one of the class where the damage to the land is to be regarded as permanent, and where the damages must be recovered in a single suit, and not from time to time as the injuries recur. Plaintiff knew, or must have known, when he suffered damages from the flood which came in April of 1942, that his damages would recur with each succeeding flood. He alleges that the land was subject to overflow before the bridge was built. The jury found that the 1945 flood was not unprecedented nor extraordinary. It may normally be expected that the land will again be flooded from time to time. The fact that the floods may be several years apart is not controlling, in view of the character of the property and the use to which it is put. It is not a mere temporary or transient damage which plaintiff will suffer with each flood that comes. His land is greatly damaged for the use to which it was put before as well as since the bridge was built. The bridge and its approaches will, to quote the language of Justice Speer in McClellan v. Krebs, supra, "of necessity cause damage" to plaintiff's property, and the damage which will result in the future when other floods come will not be that which will "result only upon some contingency which may or may not happen."

█ In Rosenthal v. Taylor, B. & H. Ry. Co., supra it is said that the measure of damages should be adopted in each case which is calculated to ascertain in the most certain and satisfactory manner the compensation to which plaintiff is entitled. In this case plaintiff sought damages in the amount of approximately $30,000. It is undisputed that he collected from a railroad company the sum of $11,000 for damages suffered to the same property in the 1945 flood, and the judgment in this case for damages in the amount of $11,137.50 is, theoretically at least, based upon the premise that his damages amounted to that sum over and above the $11,000 received from the railroad company. The facts do not present a case of mere temporary or transient damages, which may or may not oc-

cur, but present a situation where the land owned by plaintiff is certain to be flooded at intervals in the future in such way as to render it much less useful as a site for a large retail business. To our way of thinking, it is a case where, under the rules above referred to, all of the damages to the land ought to be recovered in a single suit, and the liability of the City of Fort Worth fully and finally determined. In such a case, it must be said that the cause of action arose at least not later than the time of the 1942 flood, when it became visibly apparent that the bridge and its embankments and approaches would cause a damage to plaintiff's property. The rule as to temporary damages is not applicable to a state of facts like those of the present case, and, so far as we can find, has never been applied in a case like this. It follows that we believe that the defense of limitations should have been sustained.

The judgment of the trial court is therefore reversed, and judgment here rendered f( r the appellant.