JUDGE PRYOR
delivered the opinion op the court.
The appellants Kemper and wife were living upon and the owners of a small lot of ground in the city of Louisville, bordering on an improvement, made after their purchase, known as Grayson Street. This street was laid out and constructed in accordance with an ordinance passed by the general council. The lot is located in that portion of the city where the water, after heavy rains, accumulates in such quantities as to create small ponds that flow from one to the other, and in a short time are drained by a depression on the surface of the ground. Appellants had avoided this temporary inconvenience, caused by this collection of water, by elevating the lot above the natural surface, and were in the undisturbed use and enjoyment of their property, until the construction of Grayson Street by the city authorities. In making that improvement a fill was thrown across the natural drain, without sewer or culvert, so as to obstruct the passage of the water, and the result is that much of the lot of appel *90 lants is permanently covered by water, and their dwelling rendered almost uninhabitable, and for this injury the present action was instituted against the city. The reflux of the water, caused by the erection of the fill, has destroyed the shrubbery in the yard of appellants, and causeways are required to be built so as to enable appellants to avoid the water when going to or from their dwelling. On the trial, it appearing that the fill was made as directed by the city ordinance, and the engineer stating that he proposed to remedy the wrong for a small compensation, to be paid by the appellants, the court below instructed the jury to find for the city, and the appellants, maintaining that they must have some redress for this injury, have appealed to this court. The facts of the case are undisputed, and while the appellee has not converted the property of appellants to its own use, it has by the action of its council and employees inflicted such an injury to appellants’ property as to render it almost valueless, and if there is no constitutional restraint upon this attempted exercise of the right of eminent domain, it must necessarily follow, that, in all cases where the property of the citizen has not been actually taken by the government, it may be occupied or its use destroyed, for whatever may be considered the public good, and the owner denied compensation.
We are not disposed to controvert the position, assumed by counsel for the city, that the owners of lots hold them with an implied consent on their part that the city or properly-constituted authorities may construct streets or change the grade of streets when deemed expedient, or the public good requires it, and the citizen must submit to such incidental disadvantages as do not amount to an invasion of his private rights; but where the property of the citizen has been taken, or such acts committed by the city or those in authority as amount to a total or partial destruction of his property, the damages sustained being the direct and immediate consequence *91 of the acts complained of, he can not be denied the protection, of that constitutional provision entitling him to just compensation before appropriating his property to public use. This applies to the citizen whether the property injured and owned by him is in the town, county, or city, and a municipal corporation can be invested with no greater right in the attempt to appropriate private property for public use than can be given by the state to an individual or private corporation, and, where private rights have been invaded by either, the right to damages must follow, whether the result of state or municipal action.
Authorities may be found sustaining the doctrine that where the property is not actually taken or occupied for public use, although the value of the property may be destroyed or greatly injured, as in this case, still it is not within the letter of the constitutional provision prohibiting the appropriation of private property for public use without compensation. The whole current of authority in this state is opposed to this doctrine, and at the same time we feel that this- court has gone to the utmost limit in cases where the citizen has been denied compensation.
From the case of the Lexington & Ohio Railroad Co. v. Applegate, reported in 8 Dana, 289, and in all the subsequent decisions as late as the case of the Elizabethtown, Lexington & Big Sandy R. R. Co. v. Combs, 10 Bush, 382, it has been held in substance “ that neither the state legislature or municipal corporation could license a private nuisance, or take or encroach on private property without the owner’s consent or the payment to him of adequate damages.” While the citizen can claim no damages for the mere inconveniences that may result from the construction or repairs of streets, where the city so constructs an improvement as to interfere with the private rights of the citizen, thereby causing an injury, the city must answer in damages. The appellants in this case have in effect been deprived of the *92 use of their lot. Their mode of ingress and egress has not only been obstructed, but the water turned back upon-the soil, destroying their shrubbery and garden and injuring the health of their family. The city might just as well-have taken actual possession of the lot as to have deprived the owners of its legitimate use in this. way. Compensation is as much demanded in the one case as the other. (Pumpelly v. Green Bay Co., 13 Wallace, 166.)
It is immaterial how much the public may be interested in the improvement of Grayson Street and the benefits to be derived from it. No invasion of a private right can be sanctioned upon the plea that the public good requires it, and all remedy denied the,citizen.
The city authorities acted, no doubt, within the scope of their authority in ordering this street to be constructed, and it may be conceded (although the proof seems otherwise) that the utmost care and skill was used in its construction. If the appellants’ lot was actually damaged by the reflux of the water caused by the erection of the fill, a cause of action exists, and damages should be given.
The agents of the city in making the improvement, if they acted with proper care and skill, may not be liable — a question not necessary to decide; but if not, it affords a still stronger argument for making the party causing the injury answer in damages.
We fail to see why a municipal corporation is not liable in a case like this for the damages actually inflicted, for the reason that it acted in pursuance of law; that is, it had the right to make the improvement, and in its construction by its agents acted with proper care and skill, and therefore had the right to destroy or injure the private property of the citizen without compensating him for the wrong. If caused by a private corporation or an individual, either must respond in damages, but if by a municipal corporation, it is exempt from liability.
*93 We find no such exception in the constitutional provision designed for the protection of the citizen in his right of property, and a corporation, although created for governmental and police purposes, is as much liable in such a case as any private corporation.
The right to compensation in this case is as clear as if the lot of appellants had been taken. “Any injury to the property of an individual which deprives the owner of the ordinary use of it, is equivalent to a taking, and entitles him to compensation. So a partial’destruction or diminution of the value of property by an act of the government, which directly and not merely incidentally affects it, is to that extent an appropriation.” (Cooley’s Const. Lim., 3d ed., page 545.)
In the case of Keasy v. The City of Louisville this court said: “Private rights must be regarded. The public, like a private person, must so use its own as not to injure another’s property. It can not take private property for public use without paying a just equivalent, nor can it disturb any personal right of enjoyment.”
While the jury was being impaneled, counsel for the appellants objected to two of the jurors on the ground that, being citizens and tax-payers of the city, they were interested in the result of the issue, and therefore disqualified. The objection was overruled, and an exception reserved.
We are hot aware of any adjudication by this court upon the question, and, although such cases have often arisen, the point seems not to have been made, and it must be conceded that in its investigation, aided by the research of counsel, the weight of authority conduces to sustain his objection.
The only statute of this state prescribing the qualifications of jurors provides that no person shall be competent “unless he be a white citizen, at least twenty-one years of age, a housekeeper, sober, temperate, discreet, and of good demeanor.” (Art. 3, chap. 62, Gen. Stat.)' The twelfth sec *94 tion of the same article gives to each litigant in civil cases the right of peremptory challenge to one fourth of the jury summoned, and the right to challenge for cause, as now provided by law.
In the challenge for cause we are left to follow as near as possible the common-law rule in determining the degree of interest that disqualifies. This rule, as well as the decided weight of authority, is, that any interest disqualifies a juror, however slight or remote. “ The law,” says Lord Mansfield, “has so watchful an eye to the pure and unbiased administration of justice, that it will never trust the passions of mankind in the decision of any matter of right. If therefore the sheriff, a juror, or witness be in any sort interested in the matter to be tried, the law considers him as under an influence which may warp his integrity or pervert his judgment, and therefore will not trust him.” (2 John. R. 194; 11 Georgia, 222; 11 Maine, 260.)
In adhering strictly to the common - law rule, or in following the numerous authorities relied on by counsel, it would be difficult, if not impossible, as our judicial tribunals are organized, to proceed with the general administration of justice. It certainly can not be that every degree of interest will render the juror incompetent, and, as said by Proffatt on Jury Trial, “ This rule must evidently have some limits. It has been the universal practice in this state, in which the bench and bar seem to have acquiesced, to permit the citizen, in cases like this, to take his seat in the jury-box.”
In all prosecutions by the state, counties, or cities where the fines collected go into the treasury of the one or the other, the tax-payer derives an interest for the reason that it may lessen thereafter the amount of revenue to be collected for state, city, or county purposes. In an action by the state against the sheriff for failing to account for the revenue upon the plea of payment, the defendant would be entitled to a jury *95 if demanded, and if the interest the citizen has in having the revenue collected and paid into the treasury is to disqualify him from being a juror, no judgment could be obtained; or if in a prosecution for the violation of a city ordinance the citizen is to be excluded as a juror by reason of his interest, no fines could be imposed where the party is entitled to a jury. The courts of the city alone have jurisdiction in such cases, and the same line of argument would exclude the judge from presiding or the sheriff from summoning a jury.
The city of Louisville and county of Jefferson constitute one of the judicial districts of the state, with the chancellor, circuit, common pleas, and city judges, chosen to preside in the trial of criminal, penal, and civil cases, with the venue subject to be changed in the manner provided by statute, and if such a degree of interest is to disqualify those who make up the judicial tribunals of the state, the administration of the law must fail in many instances for the want of judicial tribunals to hear the complaint of the citizen. The litigant is not without remedy if he can not have a fair and impartial trial where his case is pending. He may have a change of venue for the causes specified in the statute, and if none such exist, there is no reason why he shall not submit his case for trial to the court in which he has sought redress.
All cases like the one before us affect each and every citizen alike; one, it is true, may have to pay more tax than another. The result of the litigation may lessen or increase the tax, but all are injured or benefited in proportion to the amount of property owned. If the taxes are increased, each citizen must bear his proportion of the burden; and if lessened, all derive the benefits. It is a common interest, slight and often remote; and in such cases to decide the citizen incompetent as a juror would conduce to defeat the ends of justice. The organization and jurisdiction of our judicial tribunals, as well as our system of government, necessarily modifiy the rigor *96 of the common-law rule on this subject. We do not mean to say that, in cases where the interest of the juror may be regarded by the judge in the exercise of a sound legal discretion as sufficient to warp his judgment, he should nevertheless be permitted to enter the jury-box, or that if his private or personal interest is slight, he is also competent; on the contrary, any personal or private interest, however slight, disqualifies him; but ordinarily, in cases affecting municipal corporations, the mere fact that the taxes of the citizen may have to be increased or lessened, by reason of the litigation, will not disqualify him as a juror, and in this case the objection was properly disregarded.
As the case must be again tried, it is proper to suggest that in this action the appellants are entitled to recover for the injury to the lot by reason of the construction of the fill, and while no recovery can be had for physicians’ bills paid, or the loss of time on the part of the occupants on account of sickness caused by the stagnant water, etc., still these facts may be proven with a view of showing the extent to which the value of the property has been lessened. This is the actual damage sustained. The question is, how much, if any, have the dwelling and lot of appellants depreciated in value by reason of the act complained of?
The judgment is reversed, and cause remanded with directions to award a new trial, and for further proceedings consistent with this opinion.