A. J. ROSENTHAL V. TAYLOR, BASTROP & HOUSTON RAILWAY COMPANY.

No. 3005.

1. **Estoppel—Construction of Contract.**—The defendant company constructed its road upon a street upon which the residence lots of appellant fronted, in the town of La Grange. In a suit for damages to the said property the defendant company pleaded that Rosenthal was estopped to claim damages by his obligation to the defendant company made by him and others "to obtain and procure free of all costs and expenses * * * the right of way over all and every tract of land over and through which the line of said railway may enter and pass in the county of Fayette" of one hundred feet, "except where the line is located through streets already laid out, in which case the right of way shall be so much of said streets as is required for the operation of said road, and which right of way shall be obtained from the municipal authorities of said town." There was evidence tending to show damages from a faulty construction of the road in obstructing the flow of water, and from noise, smoke, etc. *Held,* that it was error to charge that the plaintiff was estopped by his contract to claim damages. The contract was that they were to obtain the consent of the authorities of the corporation. This not only defines the obligation but is a practical limitation upon the liability, and does not admit of the construction that the obligors in the contract were both to procure the consent of the town authorities and to secure the railway company immunity from injuries inflicted by it upon abutting lots upon the streets along which the track was constructed.

2. **Right of Way Through a Public Street.**—The operation of a railway upon a public street without the consent of the municipal authorities would be a nuisance. Having obtained the right to operate the road along the street, it is subject to the provision of the Constitution which secures indemnity to those whose property is damaged for a public use.

3. **Damming up Water Upon Street.**—The obstruction of the flow of the water in the construction of a railway is contrary to the statute (article 4171, Revised Statutes), and an action lies for damages for it.

4. **Measure of Damages.**—The depreciation in the value of property caused by the railway is the most certain measure of damages to the owner.

APPEAL from Fayette. Tried below before Hon. H. Teichmueller. The opinion gives a statement.

*R. H. Phelps,* for appellant. — The court erred in charging the jury that the terms of the contract entered into by the plaintiff with the defendant company estops the plaintiff from asserting, and a recovery of damages that may result from the ordinary and proper operating of trains. We respectfully assert that the above is not the law of this case, and that by signing said contract plaintiff (appellant) was not estopped or debarred from recovering any damages done to his property abutting upon the right of way of said appellee, but that he had the same right to recover such damages as any other citizen or property owner would have had. No such inference can be drawn from said contract as that this appellant by signing it agreed with others to do more than to procure the right of way and depot grounds through Fayette County for appellee. If the court's construction of said contract is the legal one, then the parties thereto are

bound to said company for all amounts recovered against it as damages caused by the erection of said road through the streets of the town of La Grange by any property owner of said town, or for that matter by any one in Fayette County whose lands along appellee's line of road have been damaged by said road. Grigsby v. Peak, 68 Texas, 235; Grigsby v. Caruth, 57 Texas, 269; Scoby v. Sweatt, 28 Texas, 730.

*J. C. Brown,* for appellee.—The court rightly interpreted the written contract between plaintiff and others and the defendant railway company to bar plaintiff of his right to recover of defendant for permanent damages to his real estate, resulting from the construction and operation of the railway. His rights to or in the streets are but real estate—are incorporeal hereditaments incident to his lots. If the lots themselves had been passed through by the railway there is no contention that the railway company would be liable to plaintiff, but inasmuch as it only runs near to his lots in a street, and thus affected them, the claim is made that the company is liable to plaintiff, notwithstanding his signing the contract, which is joint and several as to the undertakings of the signers of same. Railway v. Helsley, 62 Texas, 596; Railway v. Tait, 63 Texas, 226; Railway v. Seymour, 63 Texas, 346; Railway v. Schofield, 72 Texas, 496.

GAINES, ASSOCIATE JUSTICE.—The appellant sued appellee to recover damages for a depreciation in value of his lot in the town of La Grange, alleged to have resulted from the construction of appellee's road and the operation of its trains along a street in front of his property.

In defense appellee alleged that appellant, with others, before the construction of its road, had entered into a contract with it to procure for it the right of way through the town, and that they did procure the right of way along the street upon which the railway was constructed.

The contract was made a part of the answer, and it appears by its terms that the plaintiff and others bound themselves, among other things, "to obtain and procure free of all costs and expenses of the party of the first part of the owners thereof for the party of the first part the right of way over all and every tract of land over and through which the line of said railway may enter and pass in the county of Fayette, the said right of way to be not less than 100 feet in width outside of the corporate limits of towns and not less than 100 feet in width inside of the corporate limits of towns, except when the line is located through streets already laid out, in which case the right of way shall be so much of said streets as is requisite for the operation of said road, and which right of way shall be obtained from the municipal authorities of said town."

The property injured was the lots upon which the plaintiff resided with his family, and the damages were alleged to result—first, from a faulty construction of the embankment upon which the track was laid in obstruct-

ing the previous flow of water and in causing it to stand in pools near and upon the lots; and in the second place, from noise, dust, smoke, and cinders caused by the operation of the company's trains.

There was evidence tending to establish the facts alleged in the petition as to the manner of the construction of the railroad in front of the lots and as to the result of that construction and the operation of the trains. There was a conflict in the testimony upon the question whether the property had been depreciated in value or not and as to the extent of the depreciation. There was, however, testimony that the value of the property had been diminished by the amount of $1000 from the combined effects of the embankment and of the operation of the trains, but no witness testified what proportion of the depreciation was attributable to the one cause or what to the other.

The court instructed the jury as follows: " You are instructed that the terms of the contract entered into by plaintiff with the defendant company estops the plaintiff from asserting a recovery of damages that may result from the ordinary and proper operation of trains. . You are further instructed that the injury to plaintiff's premises, if any, occasioned by an alleged defective construction of the road is not of a permanent nature to the land, but renders it liable to overflows; neither the allegations of plaintiff's petition nor the evidence before you is sufficient to support a recovery for injury the premises may have sustained from successive overflows as they may have occurred. You are therefore instructed to return a verdict for defendant."

We think there was error in holding that the plaintiff was estopped by the contract with the defendant to procure the right of way. If the property had abutted upon the right of way out of a town our ruling might be different; but that question does not arise in this case and we give no opinion upon it. But the contract expressly provides what the subscribers were to do in order to procure the right of way of the company along the streets of a town, and that is that they were to obtain the consent of the authorities of the corporation. This not only defines their obligation, but is also a practical limitation upon their liability, and does not in our opinion admit of the construction that they were both to procure consent of the town authorities and to secure to the defendant immunity from the payment of damages to persons owning property which abutted on streets along which the right of way should be established, and which might be injured by the operation of the road. When the consent of the municipal authorities of La Grange for the construction of the road was procured the contract was performed so far as the street and the holders of abutting property were concerned, and the plaintiff was not estopped to claim damages for a depreciation in his property resulting from noise, smoke, cinders, and dust created by passing trains. The operation of the road under the circumstances complained of, if done without authority

of law, would have been a nuisance. The company lawfully acquired the right to operate the road along the street, subject, however, to that provision of the Constitution which secures indemnity to those whose property is damaged for a public use. Railway v. Hall, 78 Texas, 169.

But the act of the defendant in so constructing the road bed as to obstruct the flow of the water was contrary to the provisions of our statute, and when the water so obstructed became stagnant and offensive, so as seriously to discommode the plaintiff and his family in the enjoyment of their residence, the obstruction became a nuisance and the defendant liable to him for the damages resulting from it. As to the measure of damages in such cases the authorities are not altogether in accord. Since in most cases a nuisance may be abated by the injured party, and since the wrongdoer may voluntarily remedy the wrong by removing it, the general rule seems to be that ordinarily the party damaged must bring his action for such damages as have accrued up to the institution of the suit and can not recover for any prospective injury. That rule has been adopted in a case very similar to this. Hopkins v. Railway, 50 Cal., 190.

But there are other cases which announce a contrary doctrine, and we think with the better reason. Railway v. Grabill, 50 Ill., 241; Kemper v. Louisville, 14 Bush, 87; Seeley v. Alden, 61 Pa. St., 302; Troy v. Railway, 23 N. H., 102; Finley v. Horshey, 41 Ia., 389; Fowler v. N. H., etc., Co., 112 Mass., 338.

In the case last cited the court say: "The case at bar is not to be treated in this respect as an action for an abatable nuisance. More accurately it is an action against the defendant for the construction of a public work under its charter in such a manner as to cause unnecessary damage by want of reasonable care and skill in its construction. For such an injury the remedy is at common law. If it results from a cause which is either permanent in its character or which is treated as permanent by the parties, it is proper that the entire damage should be assessed with reference to the past and probable future injury."

The language quoted is peculiarly applicable to this case. The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the plaintiff is entitled. When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have occurred only up to the time of the action will be allowed; but if the nuisance is permanent and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this the resulting depreciation in the value of the property is the safest measure of compensation. Here it may be inferred from the evidence that the injury recurs upon each considerable rainfall, and continues during a stage of offensive stagnation until the water evap-

· orates.  The defendants seem to have treated the work as permanent, since they have failed, upon application, to make a culvert for the passage of·the water; and we are of opinion the depreciation in the value of plaintiff's property is the most certain measure of his damages for the injury.

The judgment is reversed and the ·cause remanded.

*Reversed and remanded.*

Delivered January 23, 1891.