BEAUMONT TRACTION COMPANY V. A. B. BROCK ET AL.

Decided December 4, 1907.

**Street Railway—Erection of Poles—Ordinance—Construction.**

By a valid ordinance a city granted to a street railway company the right to construct and operate its railway over certain designated streets; at the time the ordinance was passed it was not known where the power-house of the company would be located; the ordinance provided "that the grantees herein be and are hereby authorized to erect a system of overhead wires for the purpose of conducting the electric current to operate motors, and to properly cross from such electric current generating station, as may be required . . . that they be and are hereby authorized to erect poles to place the wires upon, etc." Held, that the express authority granted to the company carried with it the right to make such use of other streets as was necessary to connect the power-house, afterwards located and erected, with its tracks, which was essential to the enjoyment of the right expressly granted.

Appeal from the District Court of Jefferson County. Tried below before Hon. W. H. Pope.

*Crook, Da Ponte & Lawhon* and *L. F. Chester,* for appellant.

*J. S. Wheless,* for appellees.

McMEANS, ASSOCIATE JUSTICE.—This was a suit by appellees in which an injunction was sought restraining appellant from digging holes and erecting poles upon which to string an electric current feed-wire on the sidewalk in front of their respective premises fronting Avenue C, in the city of Beaumont. Upon the filing of appellees' original petition an order was made authorizing a temporary writ to issue. The case was tried on an amended petition, in which it was alleged that the appellees were the owners in severalty of certain lots on Avenue C, a public highway in the city of Beaumont, upon which they resided, and that appellant was a street railway corporation, and was digging many holes in the sidewalk in front of their property, and setting up poles therein for the purpose of conducting the electric current from its power house to its electric cars, without authority so to do from the city of Beaumont.

Appellant answered by general denial, and specially denied the equities of appellees' petition, and pleaded further that, at the time of

the issuance of the temporary writ, it was lawfully constructing its feed-wire pursuant to authority granted by an ordinance of the city of Beaumont.

The case was tried on an agreed statement of facts, and resulted in a judgment in favor of appellees perpetually restraining appellant from digging the holes and placing the poles for the erection of the feed-wire; from which judgment appellant has duly perfected this appeal.

We find the following facts: The Beaumont Traction Company is a corporation owning and operating a street railroad in the city of Beaumont, and propels its cars by electricity, using the overhead trolley system. This system consists of an electric current generating station, or power house, where the electric current is generated, and is carried thence by feed-wires, or feeders, strung on poles erected in the earth, to the trolley wires, and thence through the trolley wires to the motors with which each car is equipped. These feeder-wires are necessary to carry the power from the power house to the cars.

By a valid and regular ordinance, approved October 7, 1902, the City Council of Beaumont granted a franchise for the construction of an electric street railroad to Wm. L. Thompson and others, on and over certain designated streets, including Park street from Alma and Ector streets, the south boundary line of the city, in a general northerly direction to Emmett avenue. This franchise was duly accepted by the grantees, who organized themselves into a corporation and proceeded to build the road as therein provided, and subsequently all of the rights so acquired were transferred to appellant, Beaumont Traction Company, by the corporation organized by the original grantees, which transfer was approved and confirmed by the City Council of the city of Beaumont, and the Beaumont Traction Company is now the owner of all the franchises, rights and privileges granted to Wm. L. Thompson and others by ordinance No. 81. About the 17th day of April, 1906, the City Council of Beaumont passed a valid ordinance granting to the Beaumont Traction Company a franchise to build and operate its road over certain additional streets, including Royal street, and under this authority the company completed the construction of the Royal street line about the 20th day of March, 1907, and has been operating cars thereon continuously ever since.

The electric current generating station, or power house, was built after the passage and acceptance of ordinance No. 81, and at the time the ordinance was passed and accepted the site for the power house had not been selected, and it was not known just where the same would be located, nor where the feed-wires would have to run in order to carry the power from the power house to the trolley lines. The location finally selected was the intersection of Crockett street and Avenue C, where the power house was built and still stands, and is not on or in proximity to any part of the line of track, but the current is carried on a feed-wire erected on poles set in the ground, as is proposed to be done on Avenue C, east on Crockett street to Orleans street, where it connects with the trolley wire, and the power is thence distributed over the various lines, including Park and Royal street lines. The distance from the point where the feed-wire con-

nects with the trolley wire at Crockett and Orleans streets to the extreme south end of the Park street line is about three miles, and to the Royal street line about one mile.

The defendant has never constructed or operated its road on that part of Avenue C on which plaintiffs' property abuts, and does not intend to do so, and has no franchise so to do; nor has it obtained the consent of the city of Beaumont to construct and erect its feed-wires and poles along Avenue C in front of plaintiffs' premises, further than it is given that power and right by section 6 of the ordinance No. 81.

Neither has the defendant ever built a track from its power house eastwardly on Crockett street, where its feed-wire runs, to Orleans street, nor has it ever had any franchise or right so to do, other than is granted by said ordinances hereto attached.

About the time the injunction was sued out in this cause the defendant was engaged in extending its feed-wire from the intersection of College street and Avenue C in a southeasterly direction past plaintiffs' premises to Royal street, and thence to the Park street line, and for the purpose of setting up necessary poles on which, to carry the wire had dug several holes in the sidewalk in front of the plaintiffs' premises, and in some of the holes had set up the poles, and was preparing to place the others and fill in the dirt when stopped by the injunction.

The route as selected is the direct route from the power house by way of the streets, a good deal of the country intervening not having ever been cut up into lots and blocks, and streets dedicated.

The route of the Park street line, so far as the same is within the city limits, is prescribed by ordinance No. 81. Its terminus is the Beaumont Driving Park, which is a place of public amusement where fairs, races, ball games and other public amusements are often held, and on such occasions the same is frequented by great crowds of the residents of Beaumont, much the greater portion of whom depend upon the street railroad for transportation to and fro. Ordinarily two cars are operated upon this line, but on occasions mentioned above it is necessary to operate twelve or fifteen extra cars on this line, and the construction of the proposed new feed line along Avenue C in front of plaintiffs' premises will much increase the power available for the operation of the Park and Royal street lines, and the operation of the cars on those streets will be facilitated and the service much improved and rendered more rapid and efficient, and first-class service will be given, as required by defendant's franchise.

The city of Beaumont is a municipal corporation chartered by special Act of the Legislature, and has such power over its streets, including Avenue C, as is possessed by municipal corporations

By section 6 of ordinance No. 81 it is provided: "That the grantees herein, and their assigns, be and are hereby authorized to erect a system of overhead wires for the purpose of conducting the electric current to operate motors, and to properly cross from such electric current generating station as may be required, and to use the rails and earth for returning circuit, or may use metallic return circuits for the purpose; that they be and are hereby authorized to erect poles to place the wires upon, etc. . , ,"

By the ordinance No. 81 the city of Beaumont conferred on appellant the authority to use certain designated streets upon and over which to construct and operate its electric street railway system. At the time of the adoption of the ordinance it was not known where its electric generating current station or power house would be located, and the ordinance did not require of appellant that it construct the plant on any of the streets over which such use was granted, but left such location to the determination of the traction company. The express authority carried with it the right to make such use of other streets as was essential to the enjoyment of the authority expressly granted; and when the traction company constructed its power plant at a point remote from any part of the line of its railway it had the implied right, by virtue of the express authority, to connect its trolley wires and electric generating plant by properly constructed feed-wires, even when to do so streets other than those named necessarily had to be used for that purpose.

But we are not remitted to the question of the implied grant alone. Section 6 of ordinance No. 81 expressly provides that the grantees should have the authority to erect a system of overhead wires for the purpose of conducting the electric current to operate motors, and "to properly cross from such electric current generating station (power house) as may be required; . . . that they be and are hereby authorized to erect poles to place the wire upon." But for the concluding sentence above quoted we might conclude that the authority to erect the overhead wires to conduct the current to the motors, referred to the trolley wires by which the energy was imparted to the motors through the trolleys; but the language, "and to properly cross from such electric generating station as may be required, . . . and to erect poles to place the wires upon," forbids any such construction. In view of the fact that at the time of the adoption of the ordinance the site for the plant had not been selected, and that it might be located off the line of the railway, the language quoted could have no other meaning than it was intended thereby to grant to the traction company the right to erect its feed-wires over such streets as might be required to properly conduct the current from the power plant to the motors, although the streets so selected were not any of those designated for the construction and operation of the railway system.

It is no answer to this construction to say that feed-wires had already been constructed and were in operation in pursuance of the authority referred to, and that the erection of the feed-wire which enjoined would have imposed an additional servitude upon the street not authorized by the ordinance. The language of the ordinance is sufficiently broad to authorize the erection of such wires for conducting the current from the power plant to the motors and to cross from such power plant "as may be required." It was evidently contemplated that, as the city grew in population and territory, traffic would become heavier, necessitating an extension of the railway system, and the operation of a greater number of cars, and that more than one feed-wire might become necessary to transmit the power. If not, why were the words "as may be required" used in that connection? As

to whether other such wires were required the traction company or the city could determine, and the traction company having determined that the necessity for the additional wire existed, and having undertaken to erect the same, in a proper manner, the appellees had no right to interfere. The city had the right to permit the use of its streets for the placing of poles and erection of feed-wires, and having by the ordinance granted such privilege to appellant, the appellees have no right to complain. Gray v. Dallas, etc., Ry. Co., 13 Texas Civ. App., 165; Rosenthal v. T., B. & H. Ry. Co., 79 Texas, 327; Aycock v. San Antonio B. Assn., 63 S. W. Rep., 953.

It follows, therefore, that the court erred in perpetuating the injunction, and in not dissolving the temporary injunction as prayed for by appellant. For the error indicated, the judgment of the District Court is reversed, and judgment here rendered in favor of appellant dissolving the injunction, and it is so ordered.

*Reversed and rendered.*

Writ of error refused.