## CITY OF DALLAS v. WINANS.

### No. 14687.

Court of Civil Appeals of Texas.

Dallas.

Oct. 23, 1953.

H. P. Kucera, City Atty., Chas. C. Wells and W. M. Parks, Assts. City Atty., Dallas, for appellant.

William W. Sweet, Jr., Dallas, for appellee.

DIXON, Chief Justice.

O. C. Dickey, plaintiff, residing at 1318 Overton Road in the City of Dallas, Texas, instituted this suit against his next door neighbor to the west, Mrs. Leta Winans, residing at 1314 Overton Road, complaining that a concrete abutment erected by Mrs. Winans in the year 1952 across the front of her property caused floodwaters to be diverted so that the waters were made to flow onto and over his property. Defendant Winans answered, filed a cross-action against Dickey and also brought in the City of Dallas as a third-party defendant. As to the City, she claimed that the construction and maintenance of a culvert under and across Overton Road had changed the natural flow of surface water, greatly increasing the amount of the flow which her property would receive under natural conditions, and preventing the water from flowing over her property in a harmless diffused state. She sued for damages and also asked for a mandatory injunction either requiring the City to close the culvert, or to construct storm sewers large enough to handle the flow of surface waters. During the trial she abandoned her suit for damages.

After a trial before the court without a jury, judgment was entered in favor of plaintiff Dickey requiring Mrs. Winans to reduce the height of her cement wall to the same level as the wall and land level at the front of Dickey's property; but judgment was rendered in favor of Mrs. Winans granting her a mandatory injunction against the City of Dallas "requiring the City of Dallas to take all practical steps necessary to avoid the excessive collection and discharge of surface waters at the point of the culvert involved. In other words, the City of Dallas is directed to abate this nuisance and to take such action and do such things within the scope of its power and authority under the law as may be necessary to accomplish these results." The City of Dallas has appealed and will hereafter be referred to as appellant; Mrs. Winans will be referred to as appellee.

Prior to the trial appellant filed a written request for admissions. Appellee's written answers thereto establish that she constructed the concrete wall in front of her property sometime during the past two years for the purpose of blocking the drainage of surface water over her property from the North through a culvert lying under Overton Road; that the culvert was situated in its present location when Mrs. Winans purchased her property in 1951; that the part of Overton Road involved herein is now in substantially the same state of repair as it was when she purchased her property; that the natural lay or contour of the land westward from her house to DeKalb Street forms a gradual rise; that the natural lay or contour of the land eastward from her house to Ramona Street forms a gradual rise; that the natural lay or contour of the land northward from her house to the next street north of Overton Road forms a gradual rise; that the natural lay or contour of the land southward through her lot forms a gradual fall; and that she examined the premises at 1314 Overton before she bought the property.

Many of the material facts in this case are established by undisputed testimony. Overton Road has been a public thoroughfare for many years. One of the witnesses remembered traveling on it in 1922. At times it has been used as a route to and from the town of Midlothian, Texas, in Ellis County. The part of the road involved here was annexed by the City of Dallas in 1929. When O. C. Dickey bought his lot and built on it in 1936, his house was the only building in the block except a small structure on a lot facing another street. The culvert in question was in existence prior to 1936. Originally it was made of wood, but some years ago it was replaced by the present concrete culvert of approximately the same size. Appellee's property was located then, as it is now, at least in part in a low place or swale toward which water flowed following rains from the north, east and west of appellee's property. After converging at or near the point where the culvert is located, the water then flowed on in a southwesterly direction over appellee's property to a creek south of appellee's property. The width of the swale,

is a matter of dispute in the evidence, but it is obvious that either all or a part of appellee's lot lies within the low place. The grade upward to the east of appellee's property is somewhat steeper than the grade upward to the west of her property.

Overton Road which runs in a general direction of east and west, has drainage ditches paralleling it on both its north and its south sides. The drainage ditch on the north side brings water from both the east and the west to the low place, where it is carried under and across the street by the concrete culvert. Overton road is built up higher than the surrounding area between DeKalb and Ramona Streets, its height above the surrounding area increasing as it approaches the low place.

In 1947 one Sims, then the owner of the land, built the house now on appellee's lot. At the same time, in order to facilitate the drainage of surface waters following rains, Sims dug a ditch about ten inches deep on the lot near its east boundary line, the ditch running south from Overton Road to a point back of the garage.

Later, a man named Mais, who had become the owner of the property, hauled in dirt and graded up the back yard. He also built a solid fence some distance west of his boundary line and on the west side of the ditch, which solid fence caused some of the water to overflow onto Dickey's property. In order to prevent this, Dickey then hauled in dirt at various times to build up his lot and to construct an earthen bank against the boundary fence on the east side of Mais' drainage ditch. Thus the ditch was more or less enclosed by small levees, Dickey's earthen bank on its east side and Mais' solid fence on its west side.

Since appellee bought the property in 1951 she too has hauled in dirt and raised the level of her land. And, what is more significant, she has filled in and eliminated altogether the drainage ditch which Sims, her predecessor, had caused to be dug along the east side of the lot to carry the flood-water from the front to the rear of her property.

We find no evidence that the City of Dallas has ever done anything to change the natural flow of the surface water in the neighborhood of appellee's property. So far as the record shows, the only action ever taken by the City affecting appellee's property was to annex it in 1929, which action occurred twenty-two years prior to the time appellee acquired the premises.

The record is silent as to when or by whom the culvert in question was built. The Assistant Director of Public Works of the City of Dallas testified that so far as he knew, or so far as was shown by the records of the Department of Public Works, there had not been any new construction in or around Overton Road within twenty years.

Appellant predicates its appeal upon eleven points which we here summarize: That the City has done nothing that changed the natural flow of the surface waters; that if a cause of action ever existed, it was in favor of some remote predecessor in title, not appellee; that the culvert is a permanent public improvement, hence is not subject to abatement; that the injunction violates Art. 7589a, R.C.S. Vernon's Ann. Civ.St. art. 7589a; that appellee's cause of action was barred by the two, four, and ten-year statutes of limitation; that the injunction invades the discretion of the City Council of the City of Dallas; that appellee violated Art. 7589a, R.C.S.; and that a drainage easement exists through appellee's property by prescription.

Under the circumstances shown to exist in this case we conclude there was no duty in law or in equity on the part of the City to reconstruct the topography of the surrounding terrain at the expense of the taxpayers in such manner as to protect appellee's property from surface water following rains. It is true that the hand of man has erected artificial barriers in an effort to control the flow of waters in the neighborhood. Dickey from time to time has made changes in the original contour of his land. Appellee's predecessors in title, Sims and Mais, also made changes in the

contour of the lot now owned by appellee. Apparently the most drastic changes of all have been made by appellee herself, for she has built concrete abutments, raised the level of her land, and has completely obstructed and filled in the drainage ditch along the side of her property which Sims dug to help carry off the rain waters. But there is no evidence whatever that the City of Dallas has ever done anything to change the natural flow of the surface waters. In our opinion in the face of such a fact situation the City cannot be held responsible for, or required to correct, appellee's drainage problem. Messer v. Gulf C. & S. F. R. Co., Tex.Civ.App., 153 S.W. 928; Sun Co. v. Wyatt, 48 Tex.Civ.App. 349, 107 S.W. 934 (writ dis.); Brennan v. Corsicana Cotton Oil Co., Tex.Civ.App., 44 S.W. 588; 31 Tex.Jur. 421.

■ We believe that a cause of action against the City does not exist under the facts shown here, but if one does exist it is not in favor of appellee. The concrete culvert in question is a public improvement permanent in nature. City of Texarkana v. Rhyne, 126 Tex. 77, 86 S.W.2d 215 (Comm.App. opinion adopted); Dugan v. Long, 234 Ky. 511, 28 S.W.2d 765; Louisville & N. R. Co. v. Bennett, 207 Ky. 776, 271 S.W. 71. If its construction injured the land at all, it was a permanent injury which had already occurred when appellee acquired the property, and no right of action accrued to appellee. The claim against the City, if there was any claim, was in favor of the owner of the property at the time the injury occurred—not in favor of a subsequent purchaser. Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d 561; Texas Central R. Co. v. Brown, 38 Tex.Civ. App. 610, 86 S.W. 659.

■ Even if the City were guilty of maintaining a nuisance (which we do not hold), appellee would not be entitled to the remedy of mandatory injunction, but would be relegated to her remedy for damages—this because permanent public improvements are not subject to abatement. City of Dallas v. Megginson, Tex.Civ.App., 222 S.W.2d 349; Williams v. City of Dallas, Tex.Civ.App., 52 S.W.2d 373; Rosenthal v. Taylor, B. & H. R. Co., 79 Tex. 325, 15 S.W. 268. Moreover, such cause of action would be barred if suit were not instituted within two years from the date of the occurrence of the injury, which in this case would be the date of the construction of the culvert. City of Athens v. Evans, Tex. Com.App., 63 S.W.2d 379; Tarrant County Water Control, etc. v. Reid, Tex.Civ.App., 203 S.W.2d 290.

■ The construction, demolition, and alteration of public improvements are matters of policy which come within the discretionary powers of the City Council. Except in cases of fraud, or arbitrary, capricious acts, courts may not interfere with the exercise of these discretionary powers. For that additional reason we think the mandatory injunction in this case cannot be upheld. Stone v. City of Wylie, Tex.Com. App., 34 S.W.2d 842; Webb v. Dameron, Tex.Civ.App., 219 S.W.2d 581 (ref.n.r.e.); Mayer v. Kostes, Tex.Civ.App., 71 S.W.2d 398, ref.

Appellant's points one (in part), two (in part), three, six, seven, eight, and nine are sustained; all others are overruled.

■ In our opinion the judgment granting a mandatory injunction against the City of Dallas was without any support in the evidence. The judgment will therefore be reversed and judgment here rendered in favor of the City, denying the injunction and decreeing that appellee take nothing against the City.

Reversed and rendered.