CITY OF PRINCETON,
Texas, Appellant,

v.

Tonnie ABBOTT and Mildred
Abbott, Appellees.

No. 05-89-00527-CV.

Court of Appeals of Texas,
Dallas.

May 16, 1990.

Rehearing Denied July 10, 1990.

**162**

Robert F. Brown, Dallas, for appellant.

Raymond G. Wheless, Dallas, for appellees.

Before McCLUNG, LAGARDE and OVARD, JJ.

## OPINION ON MOTION FOR REHEARING

OVARD, Justice.

Our opinion dated March 19, 1990, is hereby withdrawn, and this opinion on the City of Princeton's motion for rehearing is substituted in its place.

The City of Princeton (the City) appeals a jury verdict rendered in favor of Tonnie Abbott and Mildred Abbott (the Abbotts) involving the responsibility for water damage incurred by the Abbotts. This is the second time this Court has had the opportunity to hear this case. *See Abbott v. City of Princeton, Texas*, 721 S.W.2d 872 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). The first time this case came to our Court, we reversed a summary judgment rendered in favor of the City. The City raises nine points of error in this appeal, addressing various legal and factual insufficiency points, the overruling of the City's objections to certain submitted questions, as well as the denial of some of the City's requested questions and instructions. Finding no merit in any of the City's contentions, we affirm the trial court's judgment.

The record reflects that, in 1969, the Abbotts purchased a two-acre tract of land in Princeton, Texas. Soon after the purchase, a roller skating rink was constructed on the property. Immediately north of the Abbotts' property exists an easement owned by the City, originally granted to the City to use as an extension for a street. Located on this easement is an agricultural terrace/embankment. Immediately north of the City's easement existed terraced farmland owned by the Princeton Independent School District. In 1971, the school decided to level the agricultural terraces, which placed the land in its natural state, in conjunction with the construction of a football stadium and adjoining parking lot. After the leveling of the terraces, upon heavy rainfall, the rainwater would run from north to south, collect at the City's embankment, and then overflow the embankment, damaging the Abbotts' roller rink. Before the terraces were leveled, they op-

erated as a series of dams which stopped and diffused the flow of rainwater.

■ Because points of error one through three address legal, and in the alternative, factual sufficiency evidentiary points, they will be discussed together. In addressing a legal sufficiency or no evidence challenge, we must consider only the evidence and inferences, viewed in their most favorable light, which support the jury's finding, and we must disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1986); *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford*, 726 S.W.2d at 16. When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983); *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 755 (Tex.1970); *see also* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L. REV. 361 (1960). However, if the evidence supplies some reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, there is some evidence or, in other words, more than a scintilla of evidence. *Kindred*, 650 S.W.2d at 63.

■ In addressing a factual sufficiency of the evidence challenge upon a jury verdict, an appellate court must consider and weigh *all* of the evidence, not just that evidence which supports the verdict as is done in the face of a no evidence challenge. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176; *Dyson v. Olin Corp.*, 692 S.W.2d 456,

457 (Tex.1985). However, this Court has stated that we are not a fact finder, and thus, we may not pass on the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

The City maintains that the trial court erred in denying the City's motions for judgment n.o.v. and new trial because the evidence adduced at trial is legally, and in the alternative, factually insufficient to support the jury's findings that: (1) the natural flow of surface water had been diverted or impounded by the City in a manner to damage the Abbotts' property; (2) thirty thousand dollars should be awarded to the Abbotts for the reasonable expenses for necessary work, labor, and materials to prevent or avoid future water damage; and (3) the diversion or impoundment of the natural flow of surface water constituted a nuisance to the Abbotts. After a thorough review of the record, we determine that the evidence is sufficient, both legally and factually, to support the jury's findings.

■ Surface water has been defined as "[t]hat which is diffused over the ground from falling rains or melting snows, and continues to be such until it reaches some bed or channel in which water is accustomed to flow." *Stoner v. City of Dallas*, 392 S.W.2d 910, 912 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.); *Sullivan v. Dooley*, 31 Tex.Civ.App. 589, 73 S.W. 82, 83 (1903, no writ); *see also* RESTATEMENT (SECOND) OF TORTS § 846 and comment b (1979). The record reflects that this is precisely the type of water which collected or was impounded by the City's embankment, and then overflowed, damaging the Abbotts' property. The City contends that its conduct, in owning and maintaining the embankment, is not actionable under section 11.086(a) of the Texas Water Code [1] be-

---

1. Section 11.086(a) of the Texas Water Code provides:

   No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to contin-

   ue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

   TEX.WATER CODE ANN. § 11.086(a) (Vernon 1988).

cause the water that it is collecting or impounding is not the natural flow of "surface water." Specifically, the City contends that the water which collects at the City's embankment has not reached it in a natural state because the terrain has been altered by the school district's action in leveling the agricultural terraces. The City argues that since the land has been altered by nonnatural forces, the water, which flows over this altered land, has lost its "natural flow" characterization. We disagree. Although we are sympathetic to the fact that a third party was responsible for the terrain alteration which contributed to the Abbotts' damage, it nonetheless does not change the fact that the water which collects at the City's embankment reaches the embankment as a result of a natural flow, unaltered by any nonnatural, intervening factors. In light of the aforementioned case law interpreting "surface water," the fact that the land was returned to its natural state after the leveling of the agricultural terraces in 1971, the evidence contained in the record describing how the rainwater travels, as well as the fact that the City admitted, in response to the Abbotts' request for admissions, that the City's embankment impounds surface water, we hold that the evidence is both legally and factually sufficient to support the jury's finding of impoundment of the natural flow of surface water. *Stafford,* 726 S.W.2d at 16; *Cain,* 709 S.W.2d at 176. Point of error number one is overruled.

In its second point of error, the City complains of the submission of a question to the jury concerning the amount of money necessary to compensate the Abbotts for "reasonable expenses for necessary work, labor and materials to prevent or avoid future water damage." The jury answered this question with an amount of thirty thousand dollars. The City frames its point of error by stating that the evidence is legally, and in the alternative factually, insufficient to justify the submission of the question. The City's legal insufficiency point is not that there is no evidence to support the submission, but that, as a

matter of law, future damages are not recoverable for temporary injuries to land.

■ We will first address the legal sufficiency point and then address the factual sufficiency point. We agree with the City that the injury to the Abbotts' property is one that appears to be of a temporary nature brought about by occasional heavy rainfall. *See, e.g., Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984); *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex. 1978); *Abbott,* 721 S.W.2d at 875. We further agree that the general measure of recovery for temporary injuries to land caused by impoundment of surface water is the cost of restoring the property to its condition immediately before the injury, plus the reasonable value of the loss of its use. *See, e.g., Kraft,* 565 S.W.2d at 227; *Lone Star Gas Co. v. Hutton,* 58 S.W.2d 19, 21 (Tex.Comm'n App.1933, holding approved); *Willacy County Water Control & Imp. Dist. v. Cantrell,* 169 S.W.2d 203, 204 (Tex.Civ.App.—San Antonio), *writ dism'd,* 141 Tex. 335, 172 S.W.2d 294, 295 (1943). However, the recovery sought in the submission of the contested jury question does not fall neatly into the type of damages recoverable for temporary injuries. Without ensnaring ourselves in the finer distinctions between permanent and temporary injuries and the particular type of damages recoverable under each, we hold that, based upon the facts in the record before us, the submission and subsequent recovery for expenses necessary to accommodate inevitable future flooding problems was not a recovery for future damages prohibited under a temporary injury theory.

Russell Betts, the City's consulting engineer, testified upon cross-examination, *without objection,* that it would cost between thirty and fifty thousand dollars to lay a series of pipes along the western boundary of the Abbotts' property, which would alleviate the flooding problem. The jury returned an amount which was the lowest figure in Betts's range of costs for the necessary work. This was a *certain* amount of money, which, if paid at the

*time of trial,* would adequately compensate the Abbotts for a future, but certain and continuing, event. Moreover, the case relied upon by the City for the proposition that this type of damage is not recoverable as a matter of law can just as easily be viewed as supporting the submission and award of such damages. *See Rosenthal v. Taylor, B. & H. Ry. Co.,* 79 Tex. 325, 15 S.W. 268 (1891).

In *Rosenthal,* a property owner, who had acted with other property owners in helping a railroad company acquire an easement for the operation of its trains, brought a nuisance cause of action against the railroad for foul-smelling, offensive standing water created by an embankment built to lay train tracks. *See Rosenthal,* 15 S.W. at 268–69. There, as in our case, the injury occurred upon each considerable rainfall. Instead of the injury resulting from the impoundment and subsequent overflow of surface water as in our case, in *Rosenthal,* the injury resulted from impoundment of surface water by an embankment which created a lingering, foul-smelling pool of water. The nuisance abated whenever the water evaporated. In *Rosenthal,* the Texas Supreme Court stated, "[I]f it [the injury to the land] results from a cause which is either permanent in its character *or which is treated as permanent by the parties,* it is proper that the entire damage should be assessed with reference to the past and probable future injury." *Id.* 15 S.W. at 269. (emphasis added). The Court further stated that the railroad company apparently treated the embankment as permanent because it failed to make a culvert for the passage of the water. We are persuaded that the City, by its actions, has treated the embankment as a permanent cause of injury, because even though it placed corrective "horns" or drains in the embankment, those did not solve, but in fact exacerbated, the Abbotts' problems and a lawsuit eventually resulted.

The *Rosenthal* case is also instructive for the following rule:

[T]he controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and *satisfactory* manner the compensation to which the plaintiff is entitled. When the injury is liable to occur only at *long intervals,* or when the nuisance is *likely to be removed by any agency,* the damages which have occurred only up to the time of the action will be allowed; but if the nuisance is permanent, and the injury constantly and regularly recurs, then the whole damage may be recovered at once.

*Id.* (emphasis added); *Meat Producers, Inc. v. McFarland,* 476 S.W.2d 406, 412 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). Certainly, it would not be acceptable to deny the Abbotts the expenses contested by the City, and to force them to sue for damages after each heavy rain, for that would be a most *un*satisfactory and incomplete compensation—especially in light of the fact that the City's own engineer testified that thirty to fifty thousand dollars, if paid at the time of trial and not at some future date, would adequately alleviate the flooding problem. *See Rosenthal,* 15 S.W. at 269. In addition, although it is arguable that the rains occur at long intervals, based upon the record before this Court, it cannot be suggested that the nuisance or impoundment is likely to be removed by any agency. *See id.* The City also relies upon *Lone Star Gas Co. v. Hutton* to support its position. *See Lone Star Gas Co. v. Hutton,* 58 S.W.2d 19, 20–1 (Tex.Comm'n App. 1933, holding approved). While instructive on the damages recoverable for permanent and temporary injuries to land, it concerns the diversion of the natural flow of stream water rather than the impoundment of surface water, and is factually distinguishable to that extent. *See id.* at 20.

Additionally, the statute upon which the Abbotts' cause of action was based also supports the award. *See* TEX. WATER CODE ANN. § 11.086(a) (Vernon 1988). As mentioned previously, the statute provides in pertinent part, "[N]o person may … permit a diversion or impounding [of the natural flow of surface waters] by him to *continue,* in a manner that damages the property of another...." TEX.WATER CODE ANN. § 11.086(a) (Vernon 1988) (emphasis

added). By allowing the City to maintain the embankment in a manner known to impound the natural flow of surface water which damages the Abbotts, we would be condoning a continuing violation of the statute. Although violation of the statute would occur only upon occasional heavy rainfalls, the condition which effectuates this impounding, *i.e.*, the embankment, is a continuing hazard. In light of the aforementioned case law cited by the City which we either distinguish or use to support the jury's answer, the rule stated in *Rosenthal* as well as a clear reading of the applicable water law statute, we cannot condone such a result. Accordingly, we hold that the damages awarded to the Abbotts for expenses to prevent or avoid future water damage are recoverable as a matter of law. The City also argued that the evidence was factually insufficient to support the award. We determine that based upon the testimony of Russell Betts, the City's engineer, the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176; *see also Dyson*, 692 S.W.2d at 457. Point of error number two is overruled.

The City's third point of error contends that the evidence is legally, and in the alternative, factually insufficient to support the jury's finding that the impoundment of water by the City constituted a nuisance. The City contends, in its brief, that the Abbotts failed to prove that the City's conduct in maintaining the embankment and "horns" was unreasonable. *See Neyland v. Schneider*, 615 S.W.2d 285, 286–87 (Tex.Civ.App.—Eastland 1981, no writ); *see also Angelina Hardwood Lumber Co. v. Irwin*, 276 S.W.2d 407, 410 (Tex. Civ.App.—Galveston 1955, no writ). We disagree.

A private nuisance, as distinguished from a public nuisance, has been defined as a nontrespassory invasion of another's interest in the private use or enjoyment of land. *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606, 611 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); RESTATEMENT (SECOND) OF TORTS § 821D

(1979). Specifically, in the context of water law disputes, an invasion of one's interest in the use and enjoyment of land resulting from another's interference with the flow of surface water may constitute a private nuisance. *Bily*, 731 S.W.2d at 611; RESTATEMENT (SECOND) OF TORTS § 833 (1979). "[W]hen the invasion is not intentional, the liability of the person harmfully interfering with the flow of surface water depends upon whether his conduct has been negligent, reckless or abnormally dangerous, ... If, however, the invasion is intentional, liability depends upon whether the invasion is unreasonable." RESTATEMENT (SECOND) OF TORTS § 833 comment b (1979). An invasion is intentional if (1) the actor acts for the purpose of causing it, or (2) the actor knows that it is resulting or is substantially certain to result from his conduct. *See id.* at § 825. Clearly, from the record before us, a jury could find that the City's actions in allowing the flooding to continue, after being notified of the problem, constituted an intentional act. *See id.* at § 825 comment d, illustration 4.

The next step in the analysis is to determine whether a jury could find that the intentional act of the City in allowing the flooding to continue was unreasonable. The record reflects that the City tried to work with and accommodate the Abbotts by placing drainage pipes or corrective "horns" in and around the embankment. However, this action exacerbated, rather than alleviated, the flooding problem. The record reflects that the City was notified several times of the flooding problem and this matter was the subject of several city council meetings. Based upon this record, we hold that in examining only the evidence favorable to the jury's verdict as well as all of the evidence, both favorable and unfavorable, a jury could find that the City's conduct in impounding the natural flow of surface water was unreasonable and created a nuisance. *See Stafford*, 726 S.W.2d at 16; *Cain*, 709 S.W.2d at 176; *see also Bily*, 731 S.W.2d at 611–12; RESTATEMENT (SECOND) OF TORTS §§ 821D, 825–831, 833 (1979). Point of error number three is overruled.

■ In points of error numbers four and five, the City contends that the trial court erred in overruling its objections to submitted jury questions numbers one and five concerning impoundment of surface water and damages, respectively. Specifically, the City argues that the pleadings of the Abbotts fail to allege that the embankment caused the impounding of surface water and that they fail to support an award for future damages, in contravention of Rule 278 of the Texas Rules of Civil Procedure. TEX.R.CIV.P. 278. The portion of that rule relied upon by the City provides in part: "[T]he court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence." TEX. R.CIV.P. 278. Although the Abbotts' petition did not explicitly state that the embankment caused the flooding, sufficient facts were pleaded to give the City notice that the Abbotts intended to rely upon both the embankment and the corrective drainage pipes as causes for the impoundment of the surface water. Moreover, the law favors liberal construction of pleadings to afford substantial justice where no special exceptions have been filed. *See, e.g.,* *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex. 1982); *Hamberlin v. Longview Bank and Trust Co.,* 770 S.W.2d 12, 14 (Tex.App.— Texarkana 1989, writ denied); *Ferguson v. DRG/Colony North, Ltd.,* 764 S.W.2d 874, 883 (Tex.App.—Austin 1989, writ denied); *see also* TEX.R.CIV.P. 45. Although we note that the City filed certain special exceptions in its third amended answer, none of them addressed the issue of the Abbotts' failure to plead, with more specificity, the alleged cause of the impoundment of the surface water. Further, the record is silent as to whether any of the special exceptions were granted. Point of error number four is overruled.

■ Regarding the award of thirty thousand dollars for expenses necessary to prevent or avoid future water damage, the City contends that the Abbotts' pleadings were insufficient to support the award. A review of the record reveals that the Abbotts filed a postverdict trial amendment on August 12, 1988, to amend their petition to plead for thirty thousand dollars as the cost to install pipes along the western boundary of their property. On August 22, 1988, the City filed its response to the Abbotts' trial amendment. The judgment, signed January 17, 1989, implicitly granted the trial amendment by awarding the Abbotts the thirty thousand dollars as requested. This procedure is specifically authorized by rule 66 of the Texas Rules of Civil Procedure. TEX.R.CIV.P. 66. Even if the trial court did not recognize the postverdict trial amendment, the issue of damages was tried by consent because the testimony of Russell Betts, upon which the award was undoubtedly based, came into evidence without objection. TEX.R.CIV.P. 67. Whether properly amended in the postverdict trial amendment or tried by consent, we hold that the Abbotts' pleadings sufficiently raised the issue of damages and, consequently, the overruling of the City's objection as to this question was proper. Point of error number five is overruled.

In points of error numbers six through nine, the City complains of the trial court's failure to submit certain requested questions and instructions. The requested questions and instructions concern: the Abbotts' negligence, failure to mitigate damages, comparative causation and responsibility, comparative causation and responsibility of other sources of the Abbott's damages, nuisance, and the City's duty relating to drainage improvements and storm drainage systems. In order to warrant submission to the jury, the issues must be raised by both the pleadings and the *evidence.* TEX.R.CIV.P. 278. Further, an abuse of discretion standard is applied to a trial court's actions in refusing requested questions and instructions. *Island Rec. Dev. Corp. v. Republic of Texas Sav.,* 710 S.W.2d 551, 555 (Tex.1986); *Security Sav. Ass'n v. Clifton,* 755 S.W.2d 925, 933 (Tex.App.— Dallas 1988, no writ); *Southwestern Bell Tel. Co. v. Delanney,* 762 S.W.2d 772, 775– 76 (Tex.App.—Texarkana 1988, writ granted). Alleged jury charge error is reversible only if, after a review of the parties' pleadings, evidence, and the charge in its

entirety, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment. *Island Rec. Dev.*, 710 S.W.2d at 555; TEX.R.APP.P. 81(b)(1). After a careful review of the record, we determine that the pleadings and the evidence fail to raise the issues addressed in the requested questions and instructions. Further, upon review of the pleadings, evidence and charge contained in the record before us, we hold that the denial of the City's requested questions and instructions was neither an abuse of discretion on the part of the trial judge, nor did it amount to such a denial of the rights of the City as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Island Rec. Dev.*, 710 S.W.2d at 555; TEX.R.APP.P. 81(b)(1). Points of error numbers six through nine are overruled.

The trial court's judgment is affirmed and the City of Princeton's motion for rehearing is overruled.